UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____x

MICHAEL CARBONI

                Plaintiff                06 Civ. 15488 (RJH)

                                                ECF Case

-against-                                      Memorandum Of Law

BOB LAKE , R.J. O'BRIEN, INC.

                Defendants

_____x

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY PENDING ARBITRATION

Plaintiff Michael Carboni, by his attorneys, Herman Wun, Esq., and Pierre Sussman, Esq. respectfully submit this memorandum of law in opposition to the defendant's motion for a stay of this action in favor of arbitration under the rules of the New York Mercantile Exchange ("NYMEX" or the "Exchange").

**Preliminary Statement**

Plaintiff Carboni's grievance of defamation of character resulting in loss of current and potential business is based on the personal reference to Carboni's ethics,

1

character and integrity transmitted by Defendants Robert Lake and R.J.O'Brien & Associates, Inc. to NON- NYMEX members and business associates outside of the NYMEX jurisdiction on December 13, 2005. Defendant Lake's claim, in his own words, extends personal opinion and is tantamount to an assassination of character (with the intent to cause personal harm) and does not constitute a business or transactional dispute. As such, although arising between NYMEX members, the communication at issue is beyond the scope of Lake and R.J.O's request for mandatory member - member arbitration submission requirements. Therefore, this or any personal attack published and transmitted to entities and individuals outside of the parties enumerated in the Member Controversies section of NYMEX Arbitration Rules section 5.04(A) should be subject to the tort laws of New York and litigated in a Court of Law.

### The Parties and the Exchange

Plaintiff Carboni concedes and adopts all representations made in Defendants' section entitled "The Parties and the Exchange."

### The Action and the Email String

Defendants request NYMEX arbitration jurisdiction claiming that Carboni's case for defamation of character is based on a dispute between NYMEX members RJO, Robert Lake and Michael Carboni, regarding an alleged failed transaction between NYMEX members. The alleged transaction dispute mentioned by Carboni sent to a single client outside the NYMEX jurisdiction listed within "The Email String" sections 6 – 12 and Bob Lake's affidavit in response is not relevant to nor is it the basis for Carboni's grievance of defamation of character resulting in loss of current and potential business -- which is the original grievance. Carboni's grievance is based in totality on

2

the personal reference to Carboni's ethics, character, and integrity transmitted by Robert Lake to NON- NYMEX members and business associates outside of the NYMEX jurisdiction.

The verbiage listed in section 14 of "The Email String", further referencing email NO. 9, in which Bob Lake claims in his own words to "set the record straight" while disputing Carboni's claims, extends personal opinion and assassination of character (with the intent to cause personal harm). The words used do not communicate a business or transaction dispute issue between NYMEX members, thereby rendering the issue beyond the scope of R.J.O's request for member – member arbitration submission requirements. Therefore this or any personal attack transmitted to entities and individuals outside of the Member Controversies section of NYMEX Arbitration Rules section 5.04(A) that does not involve transactions and business conducted by members should not fall under the jurisdiction of member - member Arbitration as brought forth in section 5.04(A) subsection (1) and/or (2) citing, "Any transaction executed on the Exchange" and "The business of such Member or Member Firm on the Exchange".

**Argument**

**THE ACTION MUST NOT BE STAYED IN**

**FAVOR OF ARBITRATION**

In deciding whether arbitration should be compelled, the Second Circuit has enumerated the following factors for consideration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be non-arbitrable; and (4) if not all claims are arbitrable, the court

must determine whether to stay the balance of the proceedings pending arbitration. See Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 118 (2d Cir. 1991) (citing Genesco v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987)).

1. **An Arbitration Agreement Exists**

While plaintiffs concede an arbitration agreement exists, plaintiffs' position is that the instant matter does not fall within the scope of mandatory arbitration as set forth in NYMEX Rule 5.04(A).

2. **Plaintiff's Claims are Outside the Scope of the Arbitration Agreement Under NYMEX Rule 5.04:**

> (A) Member Controversies
>
> Members and Member Firms shall arbitrate any dispute, claim, grievance or controversy between or among Members or Member Firms (including Members or Member Firms that were Members at the time such dispute, claim, grievance or controversy arose) wholly or partially arising, directly or indirectly, out of, in connection with, or as a result of (1) Any transaction executed on the Exchange (including Exchange For Physicals transactions and deliveries against Exchange Contracts); and (2) The business of such Member or Member Firm on the Exchange.

The first step in statutory interpretation is to determine whether the language at issue has a plain and unambiguous meaning with regard to the dispute in the case. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific contest in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Company, 519 U.S. 337, 341 (1997).

In the case at hand, a strict reading of the statutory language for compelling member to member controversies requires two elements: (1) an executed transaction (2)

by that member. Here, by Lake and RJO's own admission, the transaction was not executed by RJO nor did it concern RJO. (Defendant's brief, pg. 5, ¶ 3) The dispute in question is not whether in fact RJO executed the $390,000.00 error. Instead, it is whether due to personal issues (Lake's request for a trading fee, pg.18, ¶ 14 of Carboni affidavit) Robert Lake initiated actions to "bur[y] this guy in the pit on COMEX in general . . . ."

If the issue were whether RJO made the error in question, it would fall squarely within the scope of the arbitration agreement. Similarly, if there were a dispute over the price of a trade or quantity of a trade, it would fall within the scope. The distinction arises with unprofessional conduct which enters the realm of personal interaction. Hypothetically, if one member sent another member to physically execute a trade, and the executing member injured himself falling over a pile of papers upon return due to the requesting member's negligence, one could reasonably assume that any lawsuit for negligence would not be bound by mandatory arbitration. Nor would a tort action for assault where one member physically assaults another member over an argument regarding an executed trade. These causes of action would not be bound by arbitration despite the presence of a dispute between members and despite the presence of an executed trade. In recognizing that not every dispute between members are bound by arbitration, the creators of the NYMEX rules created NYMEX Rule 5.05, which allows for permissive arbitration for "[a]ny other dispute, claim, grievance, or controversy which involves a Member or Member Firm or employee of a Member or Member Firm." In reading both provisions in the broader context of the statute as a whole, it is clear that the dispute in this instant case is permissive rather than mandatory.

5

## Conclusion

This court should not stay this action in favor of NYMEX arbitration.

Dated: New York, New York

April 27, 2007

Respectfully submitted by,

_____
Pierre Sussman, Esq.
2197 7th Avenue
New York, NY 10027
(212) 860-8510

_____
Herman Wun, Esq.
26 Broadway, 25th Floor
New York, NY 10004
(212) 509-8809

6