UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – x

MICHAEL CARBONI and                     :
C.O.M. TRADING, INC.,                         06 Civ. 15488 (RJH)
                                        :    ECF Case
                    Plaintiffs,
                                        :    **AFFIDAVIT IN SUPPORT**
                                             **OF MOTION, BY ORDER**
    – against –                         :    **TO SHOW CAUSE, TO STAY**
                                             **ARBITRATION**
                                        :    **PROCEEDINGS**
BOB LAKE and R.J. O'BRIEN &                   **COMMENCED**
ASSOCIATES, INC.,                       :    **IN THE WRONG FORUM**

                    Defendants.         :

– – – – – – – – – – – – – – – – – – – – – x

STATE OF NEW YORK     )
                                 :  *ss.*:
COUNTY OF NEW YORK )

        MICHAEL O. WARE, being duly sworn, deposes and says:

        1.   I am a member of the bar of this Court and am counsel to Mayer

Brown LLP, attorneys for defendants.  I make this Affidavit in support of defendants'

motion, by order to show cause. for an interim and then a permanent stay of of arbitration

proceedings plaintiff Michael (Oscar) Carboni has improperly commenced before the

National Futures Association ("NFA").  The action should then remain stayed pending

arbitration in what the Court has already ruled is the right place, the New York Mercantile

Exchange, Inc. ("NYMEX" or the "Exchange").

        2.   The operative amended complaint in this action is reproduced as

Exhibit A.  Reproduced as Exhibits B and C, respectively, are the transcript of a hearing

held in this action on October 5, 2007 and an Order made October 7, 2007.  The Court stayed this action in favor of NYMEX arbitration, but Carboni has not filed an arbitration case at NYMEX.

3.    Exhibit D is a copy of a letter Carboni sent to Judge Holwell in November 2007 and which Chambers later forwarded to counsel.  I did not see this letter, nor (they tell me) did Carboni's attorneys of record, until after it prompted an Order dated December 4, 2007 (Exhibit E hereto).  The letter includes a preposterous misreading of the NYMEX arbitration fee schedule.  It also includes the first mention of NFA in the history of the case.

4.    Carboni's claim in his NFA arbitration (the "NFA Arbitration") is reproduced as Exhibit F.

5.    The NFA's service letter, which the respondents received beginning on January 18, 2008, is reproduced as Exhibit G.

6.    Since we received the NFA Arbitration claim last month, I have made efforts, first with Carboni and then at NFA, to have the NFA Arbitration discontinued without the Court's intervention.  Those efforts were unsuccessful.  NFA staff has informed me that NFA will not object to RJO seeking relief from the Court.

7.    This application is made by order to show cause so that an interim stay may be granted and the Court may set service on Carboni, whose attorneys he thinks he has discharged.  Except as described above the relief sought has not previously been sought from this or any other Court.  The application is made in good faith and to promote the ends of justice.

WHEREFORE defendants respectfully request an interim and then a

permanent stay of Carboni's NFA Arbitration, followed by a renewed stay of this action

pending NYMEX arbitration.

_____

MICHAEL O. WARE

Subscribed and sworn to before me
this 7th day of February, 2008.

_____

Notary Public

JOHN A. MARSALA
Notary Public, State of New York
No. 01MA4746064
Qualified in New York County
Commission Expires April 30, 20 ⌐⌐

**Exhibit A
to Ware Affidavit**

*Amended Complaint*

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

———————————————————— x

MICHAEL CARBONI, C.O.M. Trading, Inc.

               Plaintiff

-against-

BOB LAKE , R.J. O'BRIEN & ASSOCIATES, INC.

             Defendants

———————————————————— x

*Amended Complaint*

Index No. *118338/06*

Verified Complaint

*COUNTY CLERK'S OFFICE*
*NEW YORK*
*DEC 1 3 2006*
*NOT COMPARED*
*WITH COPY FILED*

Plaintiffs Michael Carboni and C.O.M. Trading, Inc., by his attorneys, Herman Wun ,

Esq. and Pierre Sussman, Esq., for their Complaint against the defendants, allege as

follows:

## JURISDICTIONAL ALLEGATIONS

*FILED*
*DEC 1 3 2006*
*NEW YORK*
*COUNTY CLERK'S OFFICE*

1. Plaintiffs, Michael Carboni, individually as a resident of the State of New York, and

C.O.M. Trading, Inc. organized under the laws of the State of New York, with its

principal place of business in the County of Richmond, State of New York.

2. Defendants, Bob Lake, also known as Robert Lake and R.J.O'Brien & Associates, Inc.,

also known as R.J. O'Brien, Inc., both being registered to conduct business and actually

transacting business in New York and/or being residents of the State of New York.

**FACTS**

FIRST:            That at all times hereinafter mentioned the plaintiff was and still is

engaged as a commodities trader in the city of New York, County of New York, State of

New York; that Michael Carboni and C.O.M. Trading, Inc. are in the business of

providing commodities trading services to clients Calyon Financial, Inc., UBS Securities,

LLC, Lehman Brothers, Inc., Prudential Financial Derivative., AG Edwards & Sons, Inc.,

CitiGroup Global Markets, Inc., Rosenthall, Collins Group, Triland USA, HSBC

Securities USA, J.P. Morgan Futures, Inc., Fimat USA, Aldos International,ABN Amro,

Man Financial, Inc., Cadent Financial, RJObrien, The Linn Group, The Daniels Group,

Ira Epstein, Alaron Trading, Beechdale Capital, Trinity Futures, Bank of Nova Scotia,

Rauf Naushahi, David Zwebner, Spike Trading, Inc, Pat Ligamari, Mark Nordler, Steve

Dahl, Mr. Malik, Globex Offshore, Offshore Global, John Suter, and  Beechdale Referral,

Saul;  that he has conducted that business and trade in that city and county and in

Richmond County and adjoining counties for many years prior to the publishing,

circulation and utterance of the false and defamatory words hereinafter set forth and has

always borne a good reputation for honesty and uprightness in his dealings with the

public and a good reputation and credit as a commodities trader, businessman and

otherwise.

2

SECOND:        That during the past several years the plaintiffs have executed commodities trades for the aforementioned client-investors, with Robert Lake while Robert Lake was under the employ and acting as an agent of R.J.O'brien company,

THIRD:          That on or about the 13th day of December, 2005, in the County of New York, State of New York, the defendant, Bob Lake, while under the employ of and acting as an agent of Defendant R.J.O'Brien Company, maliciously published, circulated, and communicated to R.J.O'Brien Company personnel, commodities market personnel, existing and potential customers, concerning his business and trade, the following false and defamatory words:

**"I do not do business with scumbags that try to generate business off other people's perceived misfortune. This little prick can twist in the wind before he touches one piece of RJO paper. I am in the process of burying this guy in the pit and on COMEX in general, let's see how good the fills are when no one will trade with him.**

**Bob Lake"**

## FIRST CAUSE OF ACTION

FOURTH:        Paragraphs 1 through 3 are hereby realleged.

FIFTH:        Defendants' acts described above constitute Defamation of Character and Business/Trade Reputation of plaintiff.

SIXTH:        By reason of those false and defamatory words having been published and communicated concerning the plaintiff, the plaintiff has been labeled as lacking integrity, untrustworthy and incompetent, and held up to disgrace and ridicule; has been injured in his reputation in both his workplace and his private life; and has suffered and continues to suffer severe financial loss, pain and mental anguish.

SEVENTH:        That the words so published, circulated and communicated were false and defamatory, were known to the defendants to be false and defamatory, and were spoken willfully and maliciously with the intent to damage the plaintiff's good name, reputation, financial status and earning power.

## SECOND CAUSE OF ACTION

EIGHTH:        Paragraphs 1 through 3 are hereby realleged.

NINTH:        Defendants' acts constitute Tortious Interference with a Business and/or Contract.

TENTH:        Defendant Robert Lake and Defendant R.J. O'Brien, Inc., have at different times entered into business with plaintiff Carboni in that they provide trade clearing services between plaintiff and the aforementioned clients with regularity.

ELEVENTH:        Defendant Lake has, due to senior status on Defendant R.J.O'Brien's staff, gained great influence over commodities trading personnel, those employed directly by R.J.O'brien and those not, with respect to decisions regarding which brokers are chosen to execute the R.J.O'Brien "order book", constituting a significant percentage of all orders placed on the trading floor on a day to day basis.

TWELFTH:        Defendant Lake controls the amount of business directed to trading floor brokers, in that he metes out the quantity and frequency of these orders. Such control amounts to a significant degree of control in the brokerage business within the commodities exchange considering the substantial market share Defendant Lake's employer, Defendant R.J.O'Brien, Inc., enjoys.

THIRTEENTH:        In or about December 13th, 2005 , Defendant Lake, acting individually and on behalf of Defendant R.J.O'Brien Inc., published the statement delineated above to the aforementioned clients as well as various trading floor personnel on the commodities market.

5

FOURTEENTH:  Within a few days following the publication of this statement, plaintiff began receiving telephone and electronic communications from existing and prospective clients regarding the negative characterizations and innuendo published and circulated by Defendant Lake and his employer Defendant R.J.O'Brien.  Plaintiff's trading floor seat lease was terminated without warning or notice.  His guarantee, provided by J.D. Trading, Inc., was terminated without warning or notice. His guarantee, provided by F.C. Stone, Inc., was terminated without warning or notice. Plaintiff was restricted from entering his trading floor "booth."  Brokers who normally executed orders directed to them by plaintiff prior to defendants' actions suddenly refused to accept plaintiff's orders on the trading floor.  Clerks who had helped place trading orders suddenly refused to do business with him.  Members of the "Exchange" became very hostile and abusive, especially from brokers who worked with defendants.   Plaintiff and his company essentially became "black-listed" in the commodities business.

FIFTEENTH:      As a result of the Defendants' actions plaintiff and his company was, for all intents and purposes, rendered completely powerless to engage in any form of trading, with any client, or for his own benefit, in the Commodities Futures Exchange. Upon information and belief, defendants' predatory, piratical acts have been committed without the knowledge of plaintiff, causing irreparable harm and great financial loss to plaintiff.

SIXTEENTH:    The amount of damages sought in these actions exceed the

jurisdictional limits of all lower courts which would otherwise have jurisdiction.

WHEREFORE, Plaintiff demands judgment against defendants in an amount of

$20,000,000.00, together with the costs and disbursements of this action.

Dated: New York, New York
        December 11, 2006

Yours, etc.

Herman Wun, Esq.
26 Broadway, 25th Floor
New York, NY 10004
(212) 509-8809

Pierre Sussman, Esq.
2128A Westchester Avenue
Bronx, NY 10462
(718) 636-1890

7

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

————————————————————x

MICHAEL CARBONI, C.O.M. TRADING, INC.                    *Amended Verification*

                  Plaintiff                    Index No. 118338/06

-against-                                                  Verification

BOB LAKE, R.J. O'BRIEN & ASSOCIATES, INC.

                  Defendants

————————————————————x

STATE OF NEW YORK,    )
CITY OF NEW YORK      )        ss.:
COUNTY OF NEW YORK    )

**FILED**

DEC 13 2006

NEW YORK
COUNTY CLERK'S OFFICE

    Herman Wun, an attorney duly admitted to practice before the courts of the State of

New York, affirms the following to be true pursuant to CPLR 2106 and under the penalty

of perjury:

    That Herman Wun is the attorney for the plaintiff Michael Carboni and C.O.M.

Trading, Inc. in the above entitled action with offices located at 26 Broadway, 25th Floor,,

City of New York, County of New York, State of New York; that he has read the

foregoing complaint and knows the contents thereof; that the same is true to his

knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

That the reason why this verification is made by deponent instead of the plaintiff is because the plaintiff is not within the County of New York, which is the county where deponent has his office. Deponent further says that the grounds of his belief as to all matters in the complaint not stated to be upon his knowledge are based upon conversations with plaintiff/s, interviews with witnesses, and a review of correspondence between the parties and other writings relevant to this action.

Dated: New York, NY

December 13, 2006

Herman Wun

SWORN TO BEFORE ME THIS
13TH DAY OF DEC '06

TIMOTHY F. BYRNES
Notary Public, State of New York
No. 03-4975448
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires Dec. 3, 2007

**Exhibit B
to Ware Affidavit**

*Transcript of Hearing, Oct. 5, 2007*

# In The Matter Of:

*MICHAEL CARBONI, et al, v.*
*BOB LAKE, et al.,*

*October 5, 2007*

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 7A57CARM.txt, Pages 1-13

**Word Index included with this Min-U-Script®**

Page 1

```
                    7A57CARM
[1]   UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
[2]   ------------------------------x
[3]   MICHAEL CARBONI, et al,
[4]            Plaintiffs,
[5]        v.                      06 Civ. 15488
[6]   BOB LAKE, et al.,
[7]            Defendants.
[8]   ------------------------------x
[9]                                Octoer 5, 2007
                                   3:45 p.m.
[10]
      Before:
[11]
                   HON. RICHARD J. HOLWELL
[12]
                                   District Judge
[13]
                   APPEARANCES
[14]
      LAW OFFICE OF PIERRE SUSMAN
[15]       Attorneys for Plaintiffs
      BY:  PIERRE SUSMAN HERMAN WUN
[16]
      MAYER BROWN ROWE & MAW LLP
[17]       Attorneys for Defendants
      BY:  MICHAEL O. WARE
[18]       ERICA E. FLORES
[19]
[20]
[21]
[22]
[23]
[24]
[25]
```

Page 2

```
[1]            (Case called)
[2]            (In open court)
[3]        MR. SUSMAN:  Pierre Susman for Mr. Carboni.  Good
[4]   afternoon.
[5]        MR. WUN:  Herman Wun for Michael Carboni.
[6]        MR. WARE:  And I'm Michael Ware of Mayer Brown for
[7]   defendants.  With me is my colleague Erica Flores, who was
[8]   admitted to the bar of this court by Judge Duffy last week.
[9]        THE COURT:  All right.  We are on a motion to stay
[10]  pending arbitration.  Mr. Ware, it's your motion, right?
[11]       MR. WARE:  Thank you, your Honor.  I think it's a
[12]  pretty straightforward and simple presentation I have to make
[13]  this afternoon.  The Arbitration Act as two pieces, two
[14]  questions, one of them is not disputed, and that's whether
[15]  there was a written arbitration agreement.  That's conceded by
[16]  the plaintiffs.  The other question under the Act is on the
[17]  scope of the agreement.  That is disputed.
[18]       Here the scope question also has two pieces, one
[19]  undisputed.  There are two criteria under the applicable
[20]  exchange rule, and one of them, the second, is not disputed,
[21]  and that's that the dispute relate to the member's Exchange
[22]  business.
[23]       The first of the criteria is where the dispute is.
[24]  That's a question of whether the claim arises -- and I will
[25]  quote from the rule because it's meant to be as broad as
```

Page 3

```
[1]   possible -- "directly or indirectly, out of or in connection
[2]   with, or as a result of an Exchange transaction ..."
[3]        That's the dispute here.  Everything else has been
[4]   worked through and is understood.
[5]        THE COURT:  And what is the Exchange transaction?
[6]        MR. WARE:  The Exchange transaction here is the error
[7]   trade, which Carboni falsely claimed was an RJO trade.
[8]        THE COURT:  Did you say "error"?
[9]        MR. WARE:  An error trade.  Somebody messed up in the
[10]  silver pits and lost $400,000.  Carboni sent an e-mail falsely
[11]  saying that this error trade was an RJO trade.  The e-mail was
[12]  sent to -- it's e-mail number seven in the attachments -- and
[13]  in e-mail number nine Lake of R.J. O'Brien replied to all
[14]  angrily and colorfully denying the allegation that this was an
[15]  RJO trade.  The sending of that e-mail was the only act with
[16]  which the complaint charges Lake or RJO.  So, this e-mail,
[17]  which clearly arises out of an Exchange transaction, the error
[18]  trade in the silver pit, is the Exchange transaction that
[19]  satisfies the first prong of the rule of the disputed prong.
[20]  And we look at this also against the backdrop --
[21]       THE COURT:  Even though it was a transaction not
[22]  originated or executed by either of the parties in this case.
[23]       MR. WARE:  That's right.  Now, there is a nifty little
[24]  trick in plaintiffs' memo at the carry-over between pages 4 and
[25]  5, they add a "by" inside quote marks, "transaction by" a
```

Page 4

```
[1]   disputant.  But it's not in the rule.  Let me get you the exact
[2]   right spot.
[3]        They don't put it in quotes, but they slug it in line.
[4]   This is at the carry-over of pages 4 and 5 in plaintiffs'
[5]   memorandum.  "Strict reading of the language for compelling
[6]   member-to-member controversies" -- I'm reading from their memo
[7]   -- "requires two elements:  One, executed transaction; two, by
[8]   that member."
[9]        That's not in the rule.  If that were in the rule, we
[10]  wouldn't be here.  This is not a controversy RJO particularly
[11]  wants to particularly arbitrate.  We are required by Exchange
[12]  rules to -- we are not permitted under Exchange rules to
[13]  litigate controversies that are subject to compulsory
[14]  arbitration.  That's why we're here, and that's why we're here
[15]  on this motion and not on a 12(b)(6) motion.
[16]       THE COURT:  All right.  Let me hear from Mr. Susman.
[17]       MR. SUSMAN:  Your Honor, plaintiffs' position is that
[18]  the defense has taken what originally was a state tort claim
[19]  for defamation and tortious interference of contract and
[20]  transformed it into a dispute that would, if you follow their
[21]  analysis of the equation, that would be subject to arbitration.
[22]       The defendant is correct that it is conceded that R.J.
[23]  O'Brien, Inc. is a member firm subject to the arbitration
[24]  agreement, that Robert Lake is also a member subject to the
[25]  agreement, and that our client plaintiff Carboni is.
```

**Page 5**

[1] However, the dispute, as the defense would
[2] characterize it, is not in fact a dispute at all. What is at
[3] issue here is a personal, a derogatory, a vicious e-mail
[4] published by Robert Lake as an agent of R.J. O'Brien, Inc., and
[5] nowhere in that e-mail -- and it is laid out many times, but
[6] your Honor can refer to page 3 of our original complaint --
[7] nowhere in that response -- I'm not going to even refer to it
[8] as a response -- nowhere in it e-mail is there a reference to
[9] the $400,000 mistake that the defense is referring to.
[10] THE COURT: Well, that's clearly referenced in
[11] Mr. Carboni's e-mail, right?
[12] MR. SUSMAN: Yes. I would submit to the court that
[13] Mr. Carboni's e-mail to Ira Epstein is singularly directed to
[14] Ira Epstein, his friend and colleague of 20 years or so.
[15] This is an individual, this is a relationship the
[16] facts would show that existed outside the scope of a business
[17] relationship, and Ira Epstein at the point where this e-mail
[18] string develops had already decided to direct all of his
[19] business through these clearinghouses to Oscar Carboni. That
[20] business was set.
[21] THE COURT: So your client's claim essentially is that
[22] Mr. Lake and RJO have interfered with Mr. Carboni's business on
[23] the Exchange, right?
[24] MR. SUSMAN: And that takes two forms: By way of
[25] defamation and also by way of this publication.

**Page 6**

[1] THE COURT: All right.
[2] MR. SUSMAN: The defamatory e-mail --
[3] THE COURT: All right. So, that would satisfy the
[4] second prong of the arbitration provision, that it relates
[5] directly or indirectly to the business of a member or member
[6] firm on the Exchange.
[7] MR. SUSMAN: Well, respectfully, your Honor, we do not
[8] believe -- I mean it does relate -- correct, it does relate
[9] between two members of the Exchange.
[10] THE COURT: But it also relates to your client's
[11] business on the Exchange.
[12] MR. SUSMAN: No, your Honor. Respectfully, we would
[13] submit that the e-mail is a personal attack having nothing to
[14] do with business on the Exchange. There is no transaction, per
[15] se, involved; the perceived misfortune that Lake seems to be
[16] referring to in his e-mail, he doesn't make clear what he is
[17] referring to in that e-mail.
[18] In fact -- and this is what we believe the facts would
[19] show and be presented to a trier of fact -- Mr. Lake receives
[20] benefit outside the pecuniary benefit he receives from his
[21] employer. He gets what amounts to kickbacks on the trade
[22] floor. And Mr. Carboni, our client, refused to give said
[23] kickbacks in dealing with this particular client, Mr. Epstein,
[24] and that is what this e-mail is about.
[25] THE COURT: That sounds precisely like members'

**Page 7**

[1] business. You may consider it to be illegal business, but it's
[2] members' business on the Exchange, isn't it?
[3] MR. SUSMAN: Well, your Honor, the NYMEX rules provid
e
[4] not only after 5.04(A), in Rule 5.05, that arbitration is in
[5] fact permissive where any other dispute, claim, grievance or
[6] controversy which involves members exists.
[7] And I would submit to the court, for instance -- and
[8] this is in our papers as well -- if someone on the floor
[9] directs a subordinate to go retrieve something on the other
[10] side of the floor, he comes back and he trips over a pile of
[11] papers, perhaps there would be a negligence action, or if an
[12] assault occurs on the Exchange floor, which is from what I'm
[13] hearing not beyond the pale, those we would submit to the court
[14] would be subject to Rule 5.05, which is permissive arbitration.
[15] It is not that arbitration is mandatory for any dispute between
[16] members.
[17] THE COURT: No, it has to satisfy the specific
[18] language, the two prongs.
[19] MR. SUSMAN: Right. And we would submit to the court
[20] there was no executed transaction. The defense has brought
[21] that into focus.
[22] THE COURT: You would agree that if it was a broken
[23] trade between the two members, in your papers you conceded that
[24] it was a broken trade between the two parties, that there would
[25] be arbitration.

**Page 8**

[1] MR. SUSMAN: Yes. That's correct, your Honor.
[2] THE COURT: So it doesn't appear that the trade
[3] necessarily has to be a completed trade.
[4] MR. SUSMAN: That's correct, your Honor. But there
[5] was no transaction here. This e-mail string is a creation of
[6] the defense.
[7] Carboni sent one e-mail to this long-standing friend
[8] who is giving him all of this business. He did not cc anyone.
[9] He did not cc the clearinghouses.
[10] And as a matter of note, your Honor, if the business
[11] goes directly from Ira Epstein, who is a big client, to
[12] Carboni, the clearinghouse still makes their money with or
[13] without Robert Lake being involved.
[14] This e-mail can only be attributed to Robert Lake
[15] being upset in a personal fashion as to losing what is an
[16] unfair compensation, that he receives in a sense a certain
[17] amount of money for every trade that he executes on the sly.
[18] And this is an issue which can only come out as a
[19] matter of fact in front of a trier of fact. It's why we
[20] brought the case in state court. These are tortious claims
[21] that we felt were most suited for that environment, your Honor.
[22] THE COURT: All right. I have reviewed the parties'
[23] papers in some detail prior to argument, and I have a brief
[24] decision which I will just read into the record as follows:
[25] Under the Federal Arbitration Act, 9 U.S.C. Section 3,

[1] 2006, the court shall, on application of a party and upon being
[2] satisfied that the dispute is referable to arbitration under a
[3] written arbitration agreement, stay the action until
[4] arbitration is completed. An issue is referable to arbitration
[5] if: (1) a binding agreement to arbitrate exists between the
[6] parties and (2) the dispute falls within the scope of the
[7] agreement. See Spear, Leeds & Kellogg v. Central Life Assur.
[8] Co., 85 F.3d 21, 25-26 (2d Cir. 1996).
[9]          "Membership or participation in a commercial body such
[10] as NYMEX may bind individuals or companies to arbitration
[11] provided for the by-laws or rules of such an organization."
[12] Karasyk v. Marc Commodities Corp., 770 F.Supp. 824, 827-28
[13] (S.D.N.Y. 1991). Neither party disputes that they are bound by
[14] the NYMEX arbitration agreement. Therefore, the only question
[15] is whether this dispute falls within the scope of the
[16] agreement.
[17]          Federal law favors arbitration, and the scope of an
[18] arbitration agreement should be "broadly construed." See Fleck
[19] v. E.F. Hutton Group, Inc., 891 F.2d 1047, 1050 (2d Cir. 1989)
[20] ("An order to arbitrate should not be denied unless it can be
[21] said that the arbitration clause is not susceptible of a
[22] reasonable interpretation covering the asserted dispute. In
[23] short, doubts should be resolved in favor of coverage."); see
[24] also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67
[25] F.3d 20, 27 (2d Cir. 1995). Nevertheless, "the strong federal

[1] policy favoring arbitration may not extend the reach of
[2] arbitration beyond the intended scope of the clause providing
[3] for it." Spear, Leeds & Kellogg, 85 F.3d at 28.
[4]          In determining whether a dispute falls within the
[5] scope of an arbitration agreement, the court should also
[6] consider the reasonable expectations of the parties. See
[7] Spear, Leeds & Kellogg, 85 F.3d at 30; Leadertex, 67 F.3d at
[8] 28; Fleck, 891 F.2d at 1053.
[9]          The relevant arbitration clause, found in NYMEX Rule
[10] 5.04(A) provides as follows:
[11]          Members and Member Firms shall arbitrate any dispute,
[12] claim, grievance or controversy between or among Members or
[13] Member Firms (including Members or Members Firms that were
[14] Members at the time such dispute, claim, grievance or
[15] controversy arose) wholly or partially arising, directly or
[16] indirectly, out of, in connection with, or as a result of:
[17]          (1) Any transaction executed on the Exchange
[18] (including Exchange for Physicals transactions and deliveries
[19] against Exchange contracts; and
[20]          (2) The business of such Member or Member Firm on the
[21] Exchange.
[22]          The language of the arbitration agreement "wholly or
[23] partially arising, directly or indirectly, out of, in
[24] connection with, or as a result of" is broad, requiring only
[25] that the facts alleged in the complaint touch matters

[1] concerning (1) an executed transaction on the Exchange and (2)
[2] the business of a NYMEX member.
[3]          As an initial matter, Carboni argues that the relevant
[4] transaction must be executed by one of the parties to the
[5] dispute. However, the plain language of the arbitration clause
[6] imposes no such limitation and neither will the court. So long
[7] as the facts underlying the dispute arise out of a transaction,
[8] the transaction need not involve either party to the dispute.
[9] It is the second criteria, not the first, that limits the scope
[10] of arbitration to disputes with a nexus between the member and
[11] the Exchange.
[12]          Lake's allegedly defamatory remarks were made in
[13] response to Carboni's allegations that RJO failed to properly
[14] execute a trade of silver futures. Since the trade was in fact
[15] not executed, it is somewhat unclear whether there was "an
[16] executed transaction on the Exchange" to satisfy the first
[17] criteria of mandatory arbitration.
[18]          Considering the parties' expectations, however, the
[19] failure to execute a trade can constitute an executed
[20] transaction under NYMEX rule 5.04(A), such that a loss arising
[21] out of that failure or related to that failure is properly the
[22] subject of arbitration. Indeed, Carboni concedes as much when
[23] he states "If the issue were whether RJO made the error in
[24] question, it would fall squarely within the scope of the
[25] arbitration agreement."

[1]          Accepting that a failure to execute a transaction can
[2] satisfy the first criteria of the arbitration agreement, the
[3] fact that the allegedly defamatory statements were made not in
[4] direct reference to the error but rather in response to a
[5] communication about the error, does not, in the court's view,
[6] render the claim outside the scope of the agreement. The
[7] language of the agreement "arising wholly or partially arising,
[8] directly or indirectly, out of, in connection with, or as a
[9] result of" is extremely broad and encompasses both types of
[10] statements.
[11]          The facts underlying this dispute also touch upon
[12] matters concerning the business of both Carboni and RJO,
[13] thereby meeting the second criterion for arbitration. The
[14] e-mail string that culminated in the allegedly defamatory
[15] remarks concerned the potential designation of Carboni as the
[16] floor broker for Epstein's trades cleared through RJO.
[17] Moreover, the alleged damages sustained by Carboni are to his
[18] business as a floor broker on NYMEX.
[19]          Carboni argues that the dispute is outside the scope
[20] of arbitration because it is based on a "personal attack,"
[21] sounding in tort law, and does not involve transactions or
[22] business conducted by members. However, no such limitation is
[23] found in the NYMEX compulsory arbitration provision. While the
[24] dispute must touch matters concerning a transaction and the
[25] business of a member, the arbitration agreement does not limit

MICHAEL CARBONI, et al, v.
BOB LAKE, et al.,

October 5, 2007

Page 13

[1] the types of disputes covered to those of a contractual nature.

[2]      Therefore, the court finds that NYMEX Rule 5.04(A),
[3] broadly construed, covers the asserted dispute.  Consequently,
[4] the court will stay all proceedings pending completion of
[5] arbitration under the Rules of NYMEX.

[6]      That is the ruling of the court.  Is there anything
[7] further to address this afternoon?

[8]      **MR. WARE:**  One little thing, your Honor.  There was an
[9] error trade, and it's common ground of the parties; it just
[10] wasn't an RJ O'Brien trade; it was someone else.  I say this
[11] just to clean up the record.  There was indeed an error
[12] transaction, it was somebody else's, and that's covered in
[13] paragraph 13 of Lake's affidavit, and it's also discussed in
[14] paragraph 16 and 17 of Carboni.

[15]      **THE COURT:**  All right.  Thank you for that
[16] clarification.

[17]                 - - -
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

**$**

$400,000 3:10;5:9

**1**

1 9:5;10:17;11:1
1047 9:19
1050 9:19
1053 10:8
12b6 4:15
13 13:13
16 13:14
17 13:14
1989 9:19
1991 9:13
1995 9:25
1996 9:8

**2**

2 9:6;10:20;11:1
20 5:14;9:25
2006 9:1
21 9:8
25-26 9:8
27 9:25
28 10:3,8
2d 9:8,19,25

**3**

3 5:6;8:25
30 10:7

**4**

4 3:24;4:4

**5**

5 3:25;4:4
5.04A 7:4;10:10;11:20;
13:2
5.05 7:4,14

**6**

67 9:24;10:7

**7**

770 9:12

**8**

824 9:12
827-28 9:12
85 9:8;10:3,7
891 9:19;10:8

**9**

9 8:25

**A**

Accepting 12:1
act 3:15
Act 8:25
action 7:11;9:3
add 3:25
address 13:7
affidavit 13:13
afternoon 13:7
against 3:20;10:19
agent 5:4
agree 7:22
agreement 4:24,25;9:3,5,
7,14,16,18;10:5,22;11:25;
12:2,6,7,25
allegation 3:14
allegations 11:13
alleged 10:25;12:17
allegedly 11:12;12:3,14
among 10:12
amount 8:17
amounts 6:21
analysis 4:21
angrily 3:14
appear 8:2
application 9:1
arbitrate 4:11;9:5,20;
10:11
arbitration 4:14,21,23;
6:4;7:4,14,15,25;9:2,3,4,4,
10,14,17,18,21;10:1,2,5,9,
22;11:5,10,17,22,25;12:2,
13,20,23,25;13:5
Arbitration 8:25
argues 11:3;12:19
argument 8:23
arise 11:7
arises 3:17
arising 10:15,23;11:20;
12:7,7
arose 10:15
assault 7:12
asserted 9:22;13:3
Assur 9:7
attachments 3:12
attack 6:13;12:20
attributed 8:14

**B**

back 7:10
backdrop 3:20
based 12:20
benefit 6:20,20
beyond 7:13;10:2
big 8:11
bind 9:10
binding 9:5
body 9:9
both 12:9,12
bound 9:13
brief 8:23
broad 10:24;12:9
broadly 9:18;13:3
broken 7:22,24
broker 12:16,18
brought 7:20;8:20
business 5:16,19,20,22;
6:5,11,14;7:1,1,2,8:8,10;
10:20;11:2;12:12,18,22,25
by-laws 9:11

**C**

can 5:6;8:14,18;9:20;
11:19;12:1
Carboni 3:7;10;4:25;5:19;
6:22;8:7,12;11:3,22;12:12,
15,17,19;13:14
Carboni's 5:11,13,22;
11:13
carry-over 3:24;4:4
case 3:22;8:20
cc 8:8,9
Central 9:7
certain 8:16
characterize 5:2
charges 3:16
Cir 9:8,19,25
claim 4:18;5:21;7:5;
10:12,14;12:6
claimed 3:7
claims 8:20
clarification 13:16
clause 9:21;10:2,9;11:5
clean 13:11
clear 6:16
cleared 12:16
clearinghouse 8:12
clearinghouses 5:19;8:9
clearly 3:17;5:10
client 4:25;6:22,23;8:11
client's 5:21;6:10
Co 9:8
colleague 5:14
colorfully 3:14
commercial 9:9
Commodities 9:12
common 13:9
communication 12:5
companies 9:10
compelling 4:5
compensation 8:16
complaint 3:16;5:6;10:25
completed 8:3;9:4
completion 13:4
compulsory 4:13;12:23
conceded 4:22;7:23
concedes 11:22
concerned 12:15

**C** (continued)

concerning 11:1;12:12,
24
conducted 12:22
connection 3:1;10:16,24;
12:8
Consequently 13:3
consider 7:1;10:6
Considering 11:18
constitute 11:13
construed 9:18;13:3
contract 4:19
contracts 10:19
contractual 13:1
controversies 4:6,13
controversy 4:10;7:6;
10:12,15
Corp 9:12,24
court 5:12;7:7,13;19;8:20;
9:1;10:5;11:6;13:2,4,6
COURT 3:5,8,21;4:16;
5:10,21;6:1,3,10,25;7:17,
22;8:2,22;13:15
court's 12:5
coverage 9:23
covered 13:1,12
covering 9:22
covers 13:3
creation 8:5
criteria 11:9,17;12:2
criterion 12:13
culminated 12:14

**D**

damages 12:17
dealing 6:23
decided 5:18
decision 8:24
defamation 4:19;5:25
defamatory 6:2;11:12;
12:3,14
defendant 4:22
defense 4:18;5:1,9;7:20;
8:6
deliveries 10:18
denied 9:20
denying 3:14
derogatory 5:3
designation 12:15
detail 8:23
determining 10:4
develops 5:18
direct 5:18;12:4
directed 5:13
directly 3:1;6:5;8:11;
10:15,23;12:8
directs 7:9
discussed 13:13
disputant 4:1
dispute 3:3;4:20;5:1,2;
7:5,15;9:2,6,15,22;10:4,11,
14;11:5,7,8;12:11,19,24;
13:3

**D** (continued)

disputed 3:19
disputes 9:13;11:10;13:1
doubts 9:23
Dyeing 9:24

**E**

EF 9:19
either 3:22;11:8
elements 4:7
else 3:3;13:10
else's 13:12
e-mail 3:10,11,12,13,15,
16;5:3,5,8,11,13,17;6:2,13,
16,17,24;8:5,7,14;12:14
employer 6:21
encompasses 12:9
environment 8:21
Epstein 5:13,14,17;6:23;
8:11
Epstein's 12:16
equation 4:21
error 3:6,8,9,11,17;11:23;
12:4,5;13:9,11
essentially 5:21
even 5:7
Even 3:21
exact 4:1
Exchange 3:2,5,6,17,18;
4:11,12;5:23;6:6,9,11,14;
7:2,12;10:17,18,19,21;
11:1,11,16
execute 11:14,19;12:1
executed 3:22;4:7;7:20;
10:17;11:1,4,15,16,19
executes 8:17
existed 5:16
exists 7:6;9:5
expectations 10:6;11:18
extend 10:1
extremely 12:9

**F**

F2d 9:19;10:8
F3d 9:8,25;10:3,7,7
fact 5:2;6:18,19;7:5;8:19,
19;11:14;12:3
facts 5:16;6:18;10:25;
11:7;12:11
failed 11:13
failure 11:19,21,21;12:1
fall 11:24
falls 9:6,15;10:4
falsely 3:7,10
fashion 8:15
favor 9:23
favoring 10:1
favors 9:17
federal 9:25
Federal 8:25;9:17
felt 8:21
finds 13:2

October 5, 2007

Finishing 9:24
firm 4:23;6:6
Firm 10:20
Firms 10:11,13,13
first 3:19;11:9,16;12:2
Fleck 9:18;10:8
floor 6:22;7:8,10,12;
12:16,18
focus 7:21
follow 4:20
follows 8:24;10:10
forms 5:24
found 10:9;12:23
friend 5:14;8:7
front 8:19
FSupp 9:12
further 13:7
futures 11:14

**G**

gets 6:21
giving 8:8
goes 8:11
grievance 7:5;10:12,14
ground 13:9
Group 9:19

**H**

hear 4:16
hearing 7:13
Honor 4:17;5:6;6:7,12;
7:3;8:1,4,10,21;13:8
Hutton 9:19

**I**

illegal 7:1
imposes 11:6
Inc 4:23;5:4;9:19,24
including 10:13,18
indeed 13:11
Indeed 11:22
indirectly 3:1;6:5;10:16,
23;12:8
individual 5:15
individuals 9:10
initial 11:3
inside 3:25
instance 7:7
intended 10:2
interfered 5:22
interference 4:19
interpretation 9:22
into 4:20;7:21;8:24
involve 4:18;12:21
involved 6:15;8:13
involves 7:6
Ira 5:13,14,17;8:11
issue 5:3;8:18;9:4;11:23

**K**

Karasyk 9:12
Kellogg 9:7;10:3,7
kickbacks 6:21,23

**L**

laid 5:5
Lake 3:13;16;4:24;5:4,22;
6:15,19;8:13,14
Lake's 11:12;13:13
language 4:5;7:18;10:22;
11:5;12:7
law 9:17;12:21
Leadertex 9:24;10:7
Leeds 9:7;10:3,7
Life 9:7
limit 12:25
limitation 11:6;12:22
limits 11:9
line 4:3
litigate 4:13
little 3:23;13:8
long 11:6
long-standing 8:7
look 3:20
losing 8:15
loss 11:20
lost 3:10

**M**

makes 8:12
mandatory 7:15;11:17
many 5:5
Marc 9:12
marks 3:25
matter 8:10,19;11:3
matters 10:25;12:12,24
may 7:1;9:10;10:1
mean 6:8
meeting 12:5
member 4:8,23,24;6:5,5;
11:2,10;12:25
Member 10:11,13,20,20
members 6:9;7:6,16,23;
12:22
Members 10:11,12,13,13,
14
members' 6:25;7:2
Membership 9:9
member-to-member 4:6
memo 3:24;4:6
memorandum 4:5
messed 3:9
misfortune 6:15
mistake 5:9
money 8:12,17
Moreover 12:17
Morganton 9:24
most 8:21

motion 4:15,15
much 11:22
must 11:4;12:24

**N**

nature 13:1
necessarily 8:3
need 11:8
negligence 7:11
neither 11:6
Neither 9:13
Nevertheless 9:25
nexus 11:10
nifty 3:23
nine 3:13
note 8:10
nowhere 5:5,7,8
number 3:12,13
NYMEX 7:3;9:10,14;10:9;
11:2,20;12:18,23;13:2,5

**O**

O'Brien 3:13;4:23;5:4;
13:10
occurs 7:12
one 8:7;11:4
One 4:7;13:8
only 3:15;7:4;8:14,18;
9:14;10:24
order 9:20
organization 9:11
original 5:6
originally 4:18
originated 3:22
Oscar 5:19
out 3:1,17;5:5;8:18;10:16,
23;11:7,21;12:8
outside 5:16;6:20;12:6,19
over 7:10

**P**

page 5:6
pages 3:24;4:4
pale 7:13
papers 7:8,11,23;8:23
paragraph 13:13,14
partially 10:15,23;12:7
participation 9:9
particular 6:23
particularly 4:10,11
parties 3:22;7:24;9:6;
10:6;11:4;13:9
parties' 8:22;11:18
party 9:1,13;11:8
pecuniary 6:20
pending 13:4
per 6:14
perceived 6:15
perhaps 7:11
permissive 7:5,14

permitted 4:12
personal 5:3;6:13;8:15;
12:20
Physicals 10:18
pile 7:10
pit 3:18
pits 3:10
plain 11:5
plaintiff 4:25
plaintiffs' 3:24;4:4,17
point 5:17
policy 10:1
position 4:17
possible 3:1
potential 12:15
precisely 6:25
presented 6:19
prior 8:23
proceedings 13:4
prong 3:19,19;6:4
prongs 7:18
properly 11:13,21
provide 7:3
provided 9:11
provides 10:10
providing 10:2
provision 6:4;12:23
publication 5:25
published 5:4
put 4:3

**Q**

quote 3:25
quotes 4:3

**R**

rather 12:4
reach 10:1
read 8:24
reading 4:5,6
reasonable 9:22;10:6
receives 6:19,20;8:16
record 8:24;13:11
refer 5:6,7
referable 9:2,4
reference 5:8;12:4
referenced 5:15
referring 5:9;6:16,17
refused 6:22
relate 6:8,8
related 11:21
relates 6:4,10
relationship 5:15,17
relevant 10:9;11:3
remarks 11:12;12:15
render 12:6
replied 3:13
required 4:11
requires 4:7
requiring 10:24
resolved 9:23

respectfully 6:7
Respectfully 6:12
response 5:7,8;11:13;
12:4
result 3:2;10:16,24;12:9
retrieve 7:9
reviewed 8:22
right 3:23;4:2,16;5:11,23;
6:1,3;8:22;13:15
Right 7:19
RJ 3:13;4:22;5:4;13:10
RJO 3:7,11,15,16;4:10;
5:22;11:13,23;12:12,16
Robert 4:24;5:4;8:13,14
rule 3:19;4:1,9,9;11:20
Rule 7:4,14;10:9;13:2
rules 4:12,12;7:3;9:11
Rules 13:5
ruling 13:6

**S**

satisfied 9:2
satisfies 3:19
satisfy 6:3;7:17;11:16;
12:2
saying 3:11
scope 5:16;9:6,15,17;
10:2,5;11:9,24;12:6,19
SDNY 9:13
se 6:15
second 6:4;11:9;12:13
Section 8:25
seems 6:15
sending 3:15
sense 8:16
sent 3:10,12;8:7
set 5:20
seven 3:12
shall 9:1;10:11
short 9:23
show 5:16;6:19
side 7:10
silver 3:10,18;11:14
singularly 5:13
slug 4:3
sly 8:17
somebody 13:12
Somebody 3:9
someone 7:8;13:10
somewhat 11:15
sounding 12:21
sounds 6:25
Spear 9:7;10:3,7
specific 7:17
spot 4:2
squarely 11:24
state 4:18;8:20
statements 12:3,10
states 11:23
stay 9:3;13:4
still 8:12
Strict 4:5

**string** 5:18;8:5;12:14
**strong** 9:25
**subject** 4:13,21,23,24;
7:14;11:22
**submit** 5:12;6:13;7:7,13,
19
**subordinate** 7:9
**suited** 8:21
**susceptible** 9:21
**Susman** 4:16
**SUSMAN** 4:17;5:12,24;
6:2,7,12;7:3,19;8:1,4
**sustained** 12:17

### T

**thereby** 12:13
**Therefore** 9:14;13:2
**though** 3:21
**times** 5:5
**tort** 4:18;12:21
**tortious** 4:19;8:20
**touch** 10:25;12:11,24
**trade** 3:7,7,9,11,11,15,18;
6:21;7:23,24;8:2,3,17;
11:14,14,19;13:9,10
**trades** 12:16
**transaction** 3:2,5,6,17,
18,21,25;4:7;6:14;7:20;
8:5;10:17;11:1,4,7,8,16,20;
12:1,24;13:12
**transactions** 10:18;
12:21
**transformed** 4:20
**trick** 3:24
**trier** 6:19;8:19
**trips** 7:10
**two** 4:7,7;5:24;6:9;7:18,
23,24
**types** 12:9;13:1

### U

**unclear** 11:15
**under** 4:12;9:2;11:20;13:5
**Under** 8:25
**underlying** 11:7;12:11
**understood** 3:4
**unfair** 8:16
**unless** 9:20
**up** 3:9;13:11
**upon** 9:1;12:11
**upset** 8:15
**USC** 8:25

### V

**vicious** 5:3
**view** 12:5

### W

**wants** 4:11

**WARE** 3:6,9,23;13:8
**way** 5:24,25
**wholly** 10:15,22;12:7
**within** 9:6,15;10:4;11:24
**without** 8:13
**worked** 3:4
**written** 9:3

### Y

**years** 5:14

# Exhibit C
# to Ware Affidavit

*Order dated Oct. 7, 2007*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                    :
MICHAEL CARBONI, et al.,                            :
                                                    :
                    Plaintiffs,                     :
                                                    :
                                                    :        06 Civ. 15488 (RJH)
          -against-                                 :
                                                    :          **ORDER**
BOB LAKE, et al.,                                   :
                                                    :
                    Defendants.                     :
                                                    :
-------------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 10/11/07

For the reasons stated on the record at the hearing held on October 5, 2007,

defendants' motion to stay this action pending arbitration [6] is GRANTED.

SO ORDERED.

Dated: New York, New York
       October 8, 2007

                                        Richard J. Holwell
                                        United States District Judge

**Exhibit D
to Ware Affidavit**

*Nov. 28, 2007 Carboni Letter to Judge Holwell*

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1312

RICHARD J. HOLWELL
UNITED STATES DISTRICT JUDGE
PHONE: (212) 805-0256
FAX: (212) 805-7948

# FACSIMILE

Herman Wun
Law Office of Herman Wun
26 Broadway
25th Floor
Tel: 212-509-8809
Fax: 212-809-6422

Michael O. Ware
Mayer, Brown, Rowe & Maw, L.L.P. ( NYC )
1675 Broadway
New York, N.Y. 10019
Tel: 212-506-2500
Fax:  212-262-1910

**Date:**        December 7, 2007

**Pages (including cover):**    4

---

   **Counsel receiving this fax is responsible for faxing or otherwise
promptly delivering a copy to all counsel and unrepresented parties.  Do
not copy the Court on such fax or delivery.**

holwell-standard

United States District Court

Southern District of New York


Michael Carboni, et al,

      Plaintiffs,

  V.                                        06 Civ. 15488

Bob Lake, et al,

      Defendants.



                                     November 28th 2007

                                     3:45pm


To:

                         HON. RICHARD J. HOLWELL

                                  District Judge

Your Honor,

I respectfully request Your Honor's consideration for a continuance regarding the case dated October 5th, 2007 3:45pm. Stated in this transcript 7A57CARM 06 Civ 15488 Your Honor's decision was to stay this case pending completion of the Nymex Arbitration Boards proceedings.

"Therefore the court finds that Nymex rule 5.04 (A) broadly construed, covers the assorted dispute. Consequently the court will stay all proceedings pending completion of arbitration under the rules of Nymex".

If it pleases the court, I would like to present pertinent information in regards to this case that was not previously presented to the court on my behalf along with current new developments.

1) I am currently without council. It has been the conclusion of my previous attorney's, that they are not qualified to properly represent my case in a commodities related dispute. Specifically this case being presented to an arbitration board as opposed to in an open court. Please find attached a copy of my attorney's letter withdrawing them from this case. Arbitration holds a 2 year statute of limitations on filing from the date of an incidence. I find myself without representation within 10 days from that date which comes to term on December 13th 2007. It is for this reason that I appeal to Your Honor's court for a continuance.

2) My previous attorneys failed to present to Your Honor's court several key issues in regards to this case going in front of the Nymex arbitration panel. This panel would consist of the very members that unjustly removed me from my long standing seat on the exchange. Therefore the possibility of receiving a fair and just decision before Nymex arbitrators seems unlikely given the apparent conflict of interest in regards to this case. At this time I would like to request a change of venue to the National Futures Association Arbitration Board, a governing entity to which both the defendants and claimant are a party. In addition, the expected Nymex filing fees associated with this particular case will be in excess of $100,000 (One hundred thousand dollars). These fees combined with losses already sustained by my absence on the exchange as a result of the defendant's actions will further compound damages as these fees will be forfeited if I receive an unfavorable decision. NFA arbitration filing fees are substantially less at $11,000 (eleven thousand dollars) and this venue will more likely yield a fair and unbiased decision. It is for these reasons that I appeal to Your Honor's court for a change of venue to the NFA arbitration board.

This is an appeal to the court for a continuance until March 13th 2008 and a change of venue to NFA arbitration in which time I will retain and prepare proper council and be given the opportunity to receive a fair and unbiased decision by a board with no other interest in this case than to resolve a dispute in the best interest of NFA Members.

Awaiting Your Honorable decision

Michael Carboni

# NON-ENGAGEMENT LETTER
## Certified Mail, Return Receipt

November 19, 2007

Michael Carboni

2911 East Viking Road
Las Vegas, NV 89121

Dear Mr. Carboni :

We advised you of the federal court's decision for mandatory arbitration under the NYMEX rules on October 22nd, 2007, and options such as filing an appeal . We also advised you that NYMEX arbitration requires litigants pursuing a claim to provide .05 % of the claim amount up front as a deposit in order to file a claim and that you needed to inform us of your decision and financial ability to post said deposit by November 18, 2007. A copy of the NYMEX arbitration rules was previously provided to you.

This letter is to confirm that this firm will not represent you in the arbitration of your dispute with Robert Lake and RJ O'Brien in NYMEX arbitration. Since we are not currently representing you on any matter, we will not be able to monitor changes in the law or your circumstances which may affect the strength of your case.

You should be aware of the fact that time limits are involved. Under NYMEX rules, a claim must be filed within two years of the cause of action. Your cause of action started on December 13, 2005 when Robert Lake's email in question was sent to several recipients. We urge you to contact another lawyer immediately if you wish to pursue NYMEX arbitration. You should be aware that failure to proceed promptly may result in your legal matter being barred by a time limit.

If you wish to have a lawyer represent you and you do not have another lawyer in mind, we suggest you call The New York State Bar Association for a referral. The Referral Service maintains a list of lawyers who may be able to handle your case.

Thank you for contacting Herman Wun, Esq. and Pierre Sussman, Esq., P.C.. We hope we will be of service to you in the future.

Very truly yours,

PIERRE SUSSMAN, ESQ., P.C.

HERMAN WUN, ESQ.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Exhibit E
to Ware Affidavit**

*Order dated Dec. 4, 2007*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/4/07
```

-----------------------------------------------------------x

MICHAEL CARBONI, et al.,

              Plaintiffs,

     -against-

BOB LAKE, et al.,

              Defendants.

-----------------------------------------------------------x

     06 Civ. 15488 (RJH)

     **ORDER**

     The Court is in receipt of plaintiff Michael Carboni's letter to the Court dated November 28, 2007. This action has not been dismissed and Plaintiffs' counsel has not moved to withdraw as counsel for Mr. Carboni. Because Mr. Carboni is still represented by counsel in this action, all communications with the Court should occur via counsel.

     Mr. Carboni apparently asks the Court for a postponement of the deadline by which he must file his arbitration claim and for permission to submit his claim to a different arbitration body. The Court is without authority to grant the requested relief. These matters are likely governed by NYMEX arbitration rules.

     In light of Mr. Carboni's statement that his arbitration claim must be submitted by December 13, 2007, Plaintiffs' counsel is directed to timely notify Mr. Carboni of this Order.

SO ORDERED.

Dated: New York, New York
       December 4, 2007

Richard J. Holwell
United States District Judge

**Exhibit F
to Ware Affidavit**

*Dec. 12, 2007 Claim in the NFA Arbitration*

## NATIONAL FUTURES ASSOCIATION



# Arbitration Claim
### Under the NFA Member Arbitration Rules

**RECEIVED**
DEC 12 200?
ARBITRATION OFFICE

*A Claimant is the person who believes he is owed money. For a joint account, everyone who is listed on the account should be named as a Claimant. For a partnership, corporation or other entity, the entity should be listed as the Claimant. This form should be completed by the Claimant(s) or the Claimant's attorney or other representative.*

*Before you complete this Claim form, you should carefully read NFA's Member Arbitration Rules ("the Rules"). If the space provided on this form is not sufficient, attach additional sheets containing the required information. This form must be typed or printed legibly. The completed Claim form, the required number of copies and the appropriate fee should be submitted to NFA. Failure to provide the requested information will delay the processing of the claim.*

## Part I - Claimant Information

Date: 12-11-07

Name of Claimant(s): Michael J. Carboni

Home Address: 2911 E. Viking Road
Las Vegas NV 89121

Home Phone: 702-629-4755

Business Address: 2911 E. Viking Road
Las Vegas NV 89121

Business Phone: 702 629-4755

Will the Claimant(s) be represented by an attorney or other representative?   Yes ✓   No

If yes, please complete the following:

Name of Attorney or Representative: HAROLD Gewerter

Firm: Gewerter & Associates

Address: 5440 West Sahara Ave 3Rd FL
Las Vegas NV 89146

Telephone Number: 702 382 1714

Which of the following describes the attorney or representative? (Check only one.)

✓ Attorney
State(s) admitted to practice NEVADA

Bar No. 499

____ Non-Attorney
Relationship:
____ Officer, Partner or Employee;
____ Family Member, or
____ Other (specify) _____

1

# NATIONAL FUTURES ASSOCIATION

## Part II - Claim Information

1. Please list and number each firm and/or individual ("the Respondent[s]") who you want to obtain an award against. You should also provide an address and telephone number for each Respondent listed, if available. Do not list more than one firm or individual on each line. Attach additional sheets if necessary. ANYONE YOU DO NOT NAME HERE IS NOT A RESPONDENT, WHICH MEANS YOU CANNOT OBTAIN AN AWARD AGAINST THAT PERSON.

| Name of Respondent(s) | Address(es) | Telephone Number(s) |
|---|---|---|
| Bob Lake | 222 S Riverside Plaza | 312-373 5000 |
| | Suite-900 Chicago IL 60606 | |
| R.J. OBrien & Associates Inc. | " | " |
| Gerald F Corcoran | | |
| Helen McCarthy | John William OBrien | Address + |
| Colleen Mitchell Knupp | RJO Holdings Corp | Phone |
| Karen Northup | Mary Ellen Siemens | Same As Abov |

2. Is there a contract governing your relationship with the Respondent(s)? Yes ____ No _✓_ If yes, please attach a copy of the contract.

3. Give the dates of the acts or transactions that are the subject of the dispute. Dec 13, 2005 thru 2006

4. Give the date the Claimant(s) first knew that a dispute existed. Please indicate the specific *month, day and year.* (It is not enough to provide a time period or refer to the attachments. Failure to properly answer this question will delay the claim.)     Month __12__   Day __16__   Year __2005__

5a. What is the claim amount? You must include all amounts you want to recover, including punitive and treble damages. If you are requesting treble damages, you must indicate the statutory basis for the request. You should not, however, include interest, costs, attorney's fees and other expenses in the claim amount. You should request them under Question 7 on page 3.     Claim amount: $10,720,000.00

5b. Explain how you calculated the amount you have claimed in Question 5a above.

See Attached Document Named National Futures Association Part II-Claim Information Section 5B

6a. Review the table below to determine the amount of filing fees owed and enter that amount on the line at the right.

| If the claim amount is: | The filing fee is: |
|---|---|
| $     0.00 - $  10,000.00 | $     750.00 |
| $ 10,000.01 - $  50,000.00 | $  1,900.00 |
| $ 50,000.01 - $ 100,000.00 | $  3,000.00 |
| More than  $ 100,000 | $  4,400.00 |

Filing Fees: $4,400.00

2

# NATIONAL FUTURES ASSOCIATION

6b. Review the table below to determine the amount of hearing fees owed and enter that amount on the line at the right. (These fees apply to both oral hearings and summary proceedings.)

| If the claim amount is: | The hearing fee is: |
|---|---|
| $      0.00 - $ 50,000.00 | $      125.00 |
| $ 50,000.01 - $100,000.00 | $      275.00 |
| $100,000.01 - $150,000.00 | $   1,275.00 |
| $ 150,000.01 - $500,000.00 | $   2,550.00 |
| More than $500,000.00 | $   5,100.00 |

Hearing Fees: _$5,100.00_

6c. To determine the total fees, add lines 6a and 6b. Enter the amount below and send a check or money order for that amount to NFA.

Total fees: _$9500.00_

7.  Do you also request interest, costs, attorney's fees and other expenses incurred as part of the arbitration proceeding?   Yes __✓__   No _____

If yes, please describe. If you are requesting attorney's fees, you must indicate the basis for this request. Please see Section 12 of NFA's Member Arbitration Rules. _I am requesting ANY and ALL interest, cost and fees resulting from the past, present and future retainers. FILING fees, processing fees, As well as any other_

8.  Describe the basis for the claim as completely as possible. Explain what happened, when it happened, what you believe went wrong, who is to blame and why. YOU MUST EXPLAIN WHY YOU HAVE NAMED _(see below_ EACH RESPONDENT LISTED IN QUESTION 1 ON PAGE 2. Attach as many additional sheets as necessary. Please number each sentence.

_Supporting documentation is Supplied in the attached document NAMED NATIONAL Futures Association Arbitration Claim under the NFA Member Arbitration Rules Part II Section 8_

_(7) cont Costs or fees related to the resolution and or satisfaction of this pleading. IN this and[3] ANY other forums IN which this pleading is held._

# NATIONAL FUTURES ASSOCIATION

## Part III - Panel Composition and Proceeding Information

| If the claim amount is: | Then the number of arbitrators is: | And the proceeding type is: |
|---|---|---|
| $0.00 - $15,000.00 | 1 | Summary |
| $15,000.01 - $50,000.00 | 1 | Summary<br>(unless a party requests an oral hearing) |
| $50,000.01 - $100,000.00 | 1<br>(or 3 if a party or arbitrator asks NFA<br>to appoint 2 additional arbitrators) | Oral Hearing |
| More than $100,000.00 | 3 | Oral Hearing |

1. Is the claim more than $15,000?    Yes ✓    No ___
   If no, go directly to Question 4 on Page 5.

2. Site Selection: (Choose Two)
   In case an oral hearing is necessary, please list the cities of your choice for the hearing. (Please name metropolitan areas, if possible.) Even if your case will be decided by a summary proceeding, you should still indicate two states NFA should consider for arbitrator selection.
   a: _LAS Vegas NeVada_
   b: _CHICago IL_

4

**N A T I O N A L   F U T U R E S   A S S O C I A T I O N**

3.  Witness Information:
    Will you bring any witnesses?  Yes ✓  No _____
    If yes, please complete the following: (Attach additional sheets, if necessary.)

Name of Witness:  IRA Epstien

Firm where the witness is employed (if applicable):  IRA Epstien INC & Company

Address:  223 W Jackson Blvd
7th Floor
Chicago IL 60606

Telephone Number:  800 284-3010

Michael Cerdeiros   3887 Pacific ST. Las Vegas NV 89121
702 650 3000

4.  Documents:
    Please list and number all documents that you intend to use to support the claim. Please attach copies of any of these documents that are in your possession.

(1)  National Futures Association Arbitration Claim under NFA Member Arbitration Rules Part II Section 8

(2)  NFA's Member Arbitration Program Part II - Claim Information Section 5 B

(3)  Supporting Documentation Listed as Emails-1

(4)  Supporting Documentation Listed as Emails-2

**NATIONAL FUTURES ASSOCIATION**

### Part IV - Consent to Arbitration and Attestation

*The Claim form must be signed by the actual Claimant(s), not by the attorney or representative.*

I (We), the undersigned Claimant(s), state that I (we) have read the rules of National Futures Association relating to arbitration and hereby submit the present matter in controversy (as set forth in the attached Arbitration Claim, answers, replies and any other claims that may be asserted) to arbitration in accordance with the Bylaws and Rules of National Futures Association.

I (We) agree to abide by and perform any award(s) rendered pursuant to this arbitration proceeding and understand that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, I (we) voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction that may properly enter such judgment.

Further, I (we) certify that to the best of my (our knowledge), information and belief, formed after a reasonable inquiry, the statements set forth in this pleading are true and correct.

**Claimants who are individuals:**

_____
Signature of First Claimant

_____
Signature of Second Claimant

_12/11/07_____
Date

**Claimants who are partnerships, corporations or other entities:**

_____
Name of Partnership, Corporation or Other Entity

_____
Signature of Authorized Partner, Officer or Trustee

If the claim amount is $100,000 or less, forward this Claim form and any supporting documents, along with four (4) photocopied sets (i.e., Claim form and supporting documents) and a check or money order for the total fee (Question 6c on page 3), to NFA at the address below.

If the claim amount is more than $100,000, forward this Claim form and any supporting documents, along with eight (8) photocopied sets (i.e., Claim form and supporting documents) and a check or money order for the total fee (Question 6c on page 3), to NFA at the address below.

**National Futures Association**
*200 West Madison Street, Suite 1600*
*Chicago, Illinois 60606-3447*
*Attn: Arbitration Department*

6

NATIONAL FUTURES ASSOCIATION
Arbitration Claim under the NFA Member Arbitration Rules
Part II – Section (8)

1. **What happened:**

   Supporting documentation will prove that my reputation and my ability to earn an income in the futures industry was irreparably destroyed by several events including a key email written and distributed by Bob Lake of RJ O'Brien & Associates to customers and key executives at major clearing firms with whom I was successfully engaged in business. This key email, which was also sent to Ira Epstein and me stated in Bob Lake's own words "*I am now in the process of burying this guy in the pit and on COMEX in general, let's see how good the fills are when no one will trade with him*" (referring to me). This email sent by Bob Lake is shown below.

   *From: Bob Lake [mailto:blake-a-rjobrien.com]*
   *Sent: Tuesday, December 13 2005 9:47am*
   *To: barry isaacson; ira-a-iepstein.com*
   *Cc: chuckb-a-iepstein.com; Oscar_futures@yahoo.com; Gary Weber,*
   *Lenny Sowa*
   *Subject: RE: RJO O'Brien*

   *Gentlemen,*

   *I hope you will excuse the vulgarity that follows. This error was not RJO's error it was the pit broker's clerk that forgot to book the order. In any event they made the customer whole (not an RJO customer) I do not do business with scumbags that try to generate business off other peoples perceived misfortune. This little prick can twist in the wind before he touches one piece of RJO paper. I am now in the process of burying this guy in the pit and on Comex in general, lets see how good the fills are when no one will trade with him*

   *Bob Lake*

   Before these actions taken by Bob Lake and RJ O'Brien & Associates my reputation in the futures industry was held in high regard by all those with whom I was conducting business, as well as Members and Brokers of the Exchange. The attached documentation (marked as **The Emails - 1**) will support this statement.

   Within days of Bob Lake's letter of intent to bury me, the following events unfolded:
   a) Members on the trading floor became hostile with verbal attacks stating how I had allegedly stolen other broker's business.
   b) Pit brokers who had been filling orders for me on a daily basis prior to this event were suddenly refusing to accept my customer order books.
   c) Traders who I had known and done business with for many years suddenly

refused to acknowledge my bids and offers and virtually no one would trade with me in the pits.

d) Customers were calling me with viscous rumors they had just heard about my character and reputation and therefore ceased doing business with me.

e) My COMEX seat lease was unexpectedly terminated without formal notification.

f) My guarantor had hostile words for me and told me that his firm would no longer guarantee me and I should take steps to find another guarantor.

These and many other rapidly unfolding events culminated in my virtual blacklisting, rendering me completely unable to execute any of my existing customer business and making it impossible for me to obtain any new or future business on or off the trading floor due to the complete destruction of my image and reputation by the actions of Bob Lake and RJ O'Brien & Associates.

**2. When it happened:**
During the period of Mid December 2005 throughout the year of 2006.

**3. What I believe went wrong:**
Documentation will prove Bob Lake's numerous attempts to deny me the business of a 20 plus year friend and business associate, Ira Epstein. Supporting documentation will show the business had already been directed to me prior to specific events leading to Bob Lake's interference. (See attached documentation marked as **The Emails – 2**). After Bob Lake's initial attempts at stonewalling me from executing Epstein's business failed to stop Epstein's requests to get his business into my hands, (as also illustrated in **The Emails – 2**), Bob Lake's campaign began to intensify. In one instance Bob Lake verbally stated to me "If you don't leave Ira Epstein's business alone, I will bury you on the trading floor." In that same conversation he expressed to me, how "It's good to be the King!" (Alluding to the immense power and influence Bob Lake enjoyed at the time as RJ O'Brien's floor manager which afforded him the opportunity of directing huge amounts of floor business at his discretion.) Bob Lake continued to refuse to direct Ira Epstein's business to my floor operation, despite Ira Epstein's numerous demands via email and telephone conversations that I service his growing floor business. After Bob Lake's attempts failed to stop Ira's continued requests that I execute Ira's floor business, Bob Lake then demanded that I pay a .35 cent fee per contract which he dubbed "The RJO override fee" in cash, monthly, directly to him for his blessing and permission to allow Ira's business to flow to my floor operation. I flatly refused his request. This prompted Bob Lake to follow through with his threats of "*burying this guy in the pit and on COMEX in general*". It should be noted that Bob Lake's attempts to block Ira and me from doing business amounts to a decision in direct conflict with a customer's request for RJ O'Brien to have me execute Ira Epstein's business on the floor. It should be further noted that RJ O'Brien & Associates as a Company, stands to receive the same compensation regardless of who executes Ira Epstein's business on the floor. This along with the denial of Ira Epstein's persistent demand that I execute his business makes clear Bob Lake's motives to commit an act of what top lawyers have advised me amounts to no less than Tortious Interference and defamation of character.

2

Bob Lake's next move to further damage my career keeping his promise to "*burying this guy in the pit and on COMEX in general*" was to send out "The Email" which sparked the chain reaction defined in section (1) above. At this point, it makes sense to clarify and define the events leading up to the sending and the origin of the email referred to above in section (1) and to show opportunity on Bob Lake's behalf to further his campaign and make good on his promise to bury me.

On or about December 12, 2005, there had been a serious error on the COMEX trading floor. Word of mouth on the exchange had been that the RJ O'Brien& Associates silver metals executing pit broker had a $390,000.00 trading error while filling RJO orders. The broker allegedly responsible for this error is well known in the floor community as "the RJO silver paper broker". The day of this error I stuck my head into the Silver ring to inquire about the situation. By that time, the entire NYMEX/COMEX complex was buzzing about the $390,000.00 error in the Silver pit reportedly committed by this RJO broker. Several brokers told me that RJO's broker (while pointing over to the RJO silver paper broker) had a massive error today. The story, as it was told to me by several different brokers that day, was that RJO's broker forgot to book a 600 lot order. The market traded below the filling price of that order and then proceeded to head back up to a higher level rendering a 600 lot buy order unable and unfilled.

The floor wide confusion surrounding this error prompted me to simply apprise my 20 year friend and business associate Ira Epstein via email about the error because the very same broker that was executing the RJO paper was also executing Ira Epstein's business. This email sent by me to Ira Epstein is seen below. Let it be known that I sent this email below to Ira Epstein and only to Ira Epstein and not to any other person, associate or customer in the industry.

*Date:*    *Tue, 13 Dec 2005 06:26:36 -0800 (PST)*
*From:*    *"Oscar Carboni" <oscarfutures@yahoo.com>* ⬛*View Contact Details*  ⬛*Add Mobile Alert*
*Subject:Oscar/RJO*
*To:*    *"Ira Epstein" <ira@iepstein.com>*

   *Ira,*

   *Yesterday in the Silver futures RJO is so buried with paper they forgot, that's right forgot to execute buying 600 march silver @ 877.00. It cost them 390,000.00*
   *Please be careful using them for executions as they are way to busy to handle the paper load and continue to pick up old refco business as of this writing. I hope we can get our business completed this week and get you away from that atmosphere*
   *I will contact Bob Lake today. Ill keep you informed.*

   *Oscar Carboni*
   *President C.O.M. Trading Inc.*

Upon Ira's receipt of this email from me, Ira Epstein promptly dispatched the following email to Barry Isaacson (of Alaron Trading) whom Ira had been in contact with while trying to direct his business to my brokerage operation. In Ira Epstein's own words Ira told me he sent this letter to Barry in an attempt to expedite his request that I execute his floor business. Somehow the following email shown below from Ira Epstein found its way to Bob Lake, which was eventually used as a tool in his campaign to *bury me* etc…

3

-----Original Message-----
**From:** Ira Epstein [mailto:ira@iepstein.com]
**Sent:** Tuesday, December 13, 2005 9:10 AM
**To:** Barry Isaacson
**Subject:** RE: RJO O'Brien

Thanks for responding. I do mean thanks.

In my last e-mail I asked "What costs are you talking about"?

In speaking with Bob Lake and Oscar, I see no additional costs. Bob figured out a way to circumvent TOPS, eliminating the TOPS cost. RAN of course still exists and floor brokerage through Oscar exists. I assume that RJO has a fee for NY clearing. My understanding is that all of this is already is in place and being charged. Therefore I do not see any new fees?. What else is there that I am missing? I do not want to be blind sided.

If something does go wrong, I understand it will be between IECo and Oscar. Barring that, what else do you see that I am missing.

Through an introduction from me, Gordy Linn has been using Oscar for a very long time. He likes the personal service Oscar brings. The metal fund business I am developing will require at times hands on fills for some of their larger orders. Oscar should fit the bill.

While I am certain RJO is good, I received the following e-mail today from Oscar. Pretty scary if true.

*Ira,*

*Yesterday in the Silver futures RJO is so buried with paper they forgot, that's right forgot to execute buying 600 march silver @ 877.00. It cost them 390,000.00*
*Please be careful using them for executions as they are way to busy to handle the paper load and continue to pick up old refco business as of this writing. I hope we can get our business completed this week and get you away from that atmosphere*
*I will contact Bob Lake today. Ill keep you informed.*

*Oscar Carboni*
*President C.O.M. Trading Inc.*

Email end


After the email listed in section (1) (which I also received a copy of) was distributed by Bob Lake, I immediately contacted Ira Epstein for clarification as to the nature of Bob

4

Lake's hostile communication. Ira Epstein's response in regards to my inquiry about Bob Lake's hostile email was sent in the following two emails shown below.
The email shown below from Ira Epstein was sent to Bob Lake at RJ O'Brien as an attempt to defuse an obviously escalating situation perpetuated by Bob Lake for his own personal gain.

      Email sent to Bob Lake reads as follows...

      -----Original Message-----
      **From:** Ira Epstein [mailto:ira@iepstein.com]
      **Sent:** Tuesday, December 13, 2005 11:23 AM
      **To:** Bob Lake
      **Subject:** RE: RJO O'Brien

      Bob. I belive this was never meant as anything bad. Quite the opposite.

      As you know I was with Man Financial for over a decade. They had monster issues. It happens. With Man there were times when I did not get fills for over a week in metals. Sugar once ended up 3 weeks. They made good on everything. I had my hands full. but as you will discover, I am a true team player and stand behind my clearing firm and their affliates. Check my reputation out. You will find what I say is true.

      On ATC's move to RJO we missed fill freports for several days. I did not cause an uproar. never said anything derogetory and understood that changes create issues. That's how the business works. That is part and parcel to our business.

      **The good news is that it was not an RJO issue. Had it been, I still would have understood.** I have personally known the O'Brien's my whole trading life. I worked for them 20 some odd years ago. Good people.

      When ATC told me that they were moving their business to O'Brien. I appaluded the move. Given what will eventually happen with Refco and Man. I applaud it even more.

      I am certain Oscar did not do this in a harmful way. That is not the man's character. He heard of the error and reported it to me. That simple. If his facts were wrong. we've both seen that before. After 35·years in the business, I've seen enough to say that "we've all been there and done that". Life is to short to spend time on things like this.

        Let's move forward.

**Email end**

This following email was sent to me by Ira Epstein as an explanation of Bob Lake's communication. The email sent to me from Ira Epstein with this

explanation reads as follows…

From:     "Ira Epstein" <ira@iepstein.com>  ☐View Contact Details  ⏰Add Mobile Alert
To:       "'Oscar Carboni'" <oscarfutures@yahoo.com>
Subject:  RE: RJO O'Brien
Date:     Tue, 13 Dec 2005 18:32:31 -0600

*Oscar, I never sent this on in any spirit except as an alert to ATC. Barry, instead of reading this in the spirit I sent it, created an issue I never intended.*

*ATC is having RJO issues. Not terrible ones, but definite issues on fill reports and the like. I don't spread rumors.*

*You weren't the only one to report the issue. Today the Tokyo Stock Exchange lost $300 Million on an error. The point is that things happen.,,*

Although these emails sent to Bob Lake clearly explain that there was no ill intent on my behalf or any attempt whatsoever to "*try to generate business off other peoples perceived misfortune.*" (As Bob Lake states in the email in section 1) Bob Lake continued his campaign to follow through with "*burying this guy in the pit and on COMEX in general*" in retaliation to the events explained in section (3) three above.

### 4.  Who is to blame and why:

**Associate Member Bob Lake**
As supporting documentation will prove, Lake is directly responsible for the following
- Members on the trading floor became hostile with highly charged verbal attacks stating how I had allegedly stolen other brokers' business. (Resulting in my substantial personal and financial loss.)
- Pit brokers who had been filling orders for me daily prior to this event were suddenly refusing to accept my customer order books. (Resulting in my substantial personal and financial loss.)
- Traders who I had known and done business with for many years suddenly refused to acknowledge my bids and offers and virtually no one would trade with me in the pits. (Resulting in my substantial personal and financial loss.)
- Customers were calling me with viscous rumors they had just heard about my character and reputation. (Resulting in my substantial personal and financial loss.)
- My COMEX seat lease was unexpectedly pulled without warning. (Resulting in my substantial personal and financial loss.)
- My guarantee was repeatedly threatened and eventually terminated. (Resulting in my substantial personal and financial loss.)

**Associate Member RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign **SOMETHING**? against me in
an attempt to obtain personal financial gain. (Resulting in my substantial personal and
financial loss.)

**Gerald F. Corcoran CEO of RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign against me in an attempt to
obtain personal financial gain. (Resulting in my substantial personal and financial
loss.)

**Helen McCarthy CFO of RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign against me in an attempt to
obtain personal financial gain. (Resulting in my substantial personal and financial
loss.)

**Colleen Mitchell Knupp President, RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign against me in an attempt to
obtain personal financial gain. (Resulting in my substantial personal and financial
loss.)

**Karen Northup COO of RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign against me in an attempt to
obtain personal financial gain. (Resulting in my substantial personal and financial
loss.)

**John William O'Brien Board Member, RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ
O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ
O'Brien & Associates and to carry out his campaign against me in an attempt to
obtain personal financial gain. (Resulting in my substantial personal and financial
loss.)

**RJO Holdings Corporation**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ O'Brien & Associates and to carry out his campaign against me in an attempt to obtain personal financial gain. (Resulting in my substantial personal and financial loss.)

**Mary Ellen Siemens CEO Retail Division, RJ O'Brien & Associates**
For negligent failure to supervise the actions of Bob Lake as an acting officer of RJ O'Brien & Associates allowing Bob Lake to abuse his position of power at RJ O'Brien & Associates and to carry out his campaign against me in an attempt to obtain personal financial gain. (Resulting in my substantial personal and financial loss.)

**5.  Definition of Damages:**
I have been denied the opportunity to be a COMEX/NYMEX broker with a fairly large customer base in a market that has since exploded in price, volume, contracts traded and open interest. This has been and still is the longest, most sustained metals move ever in recorded history all taking place within the last 2 years. I was not able to profit from this opportunity or from the business I was lined up to execute on many fronts on and off the trading floor and can never again be obtainable to me. Bob Lake's and RJ O'Brien & Associates' influence over the industry was clearly demonstrated by the devastating effect their words and actions had on my reputation in the industry. Within only a couple of days of Bob Lake's and RJ O'Brien & Associates' email and admitted campaign to bury me in the futures business was successfully completed. By ensuring nobody would trade with me again, this blatant abuse of power in the futures industry resulted in substantial financial loss as well as irreparable personal damages to me and my career. Let it be noted that no matter what amount of damages I am awarded there is no way to put a price on the loss of a lifelong professional career and the sacrifices involved in the building and maintaining of relationships and  a pristine reputation necessary to sustain such a  career.

**6.  NFA Arbitration Location Request:**
 At this time, due to the events named in this claim and due to fear for my family's safety I now reside in Las Vegas and am without available resources to dedicate towards the litigation of this case. Furthermore, a main witness in my case now resides in Las Vegas and is currently without the financial resources to attend any hearings outside the area of Las Vegas NV. It is at this time I would like to request a National Futures Association Arbitration Board hearing be held in Las Vegas Nevada.

Please note that additional supporting documentation supporting the above claims is available upon request and will be presented as I am permitted to state my pleading to this panel.

NFA's Member Arbitration Program

Part II – Claim Information

5

b. The amount is based upon four values:

1) The loss in billable executions I was billing at the time of the dispute.

2) The loss of impending Ira Epstein billable business that was in the process of starting up, which is what caused the dispute.

3) The loss of future earnings that the new Futures Analysts/Ira Epstein entity would have attracted.

4) The besmirchment of my reputation which has caused irreparable damage to my ability to ply my trade on the floor of the COMEX/NYMEX.



Supporting Documentation listed as

Emails -1

*Ira Epstein <ira@iepstein.com> wrote:*
Sent to all just now.

**From:** Oscar Carboni [mailto:oscarfutures@yahoo.com]
**Sent:** Monday, October 03, 2005 4:31 PM
**To:** Ira Epstein
**Subject:** Re: Comex issues

Ira,

It looks great. The email addresses enclosed need to receive this letter. That should be all that is necessary. Thanks gain for your assistance.

Best of luck,

Oscar Carboni
President

*Ira Epstein <ira@iepstein.com> wrote:*
Dear gentlemen,
This email is to request that all of my Comex business generated from the Ira Epstein company via Tops to be directed to Mr. Oscar Carboni on the Comex trading floor. I have known Mr. Carboni for the better part of 20 years and would like to be able to have him execute my Comex business. Please make the necessary program changes to make this possible. I request that this is done as soon as possible. Please do not hesitate to contact me if you have and questions or concerns regarding this request.

Sincerely,
Ira Epstein
President Ira Epstein Futures

9.    I have known Ira Epstein personally for well over 20 years. I regularly visited him in Chicago throughout my career. In spring 2005 Ira Epstein and company began negotiating with his co-clearing members ATC Alaron Trading Inc. and Man Financial Corp. with the intent to transfer his entire Comex floor business over to my trading operation, COM Trading Inc. Negotiations went well with Man Financial and Alaron Trading Inc. and they began setting up the necessary equipment, quote screens and "Topps" electronic order routing systems at my Comex options booth on the exchange. In and around November 05, 2005, phone order flow from Ira Epstein had already begun coming to me at my booth.

10.   Coincidently, in mid October 2005 after weeks of planning and setting up operations to handle Ira Epstein's order flow via Man Financial, futures merchant Refco, LLC abruptly went out of business. Shortly after Refco's collapse, Man Financial purchased what was left of the failing Refco LLC. For reasons I could only speculate, this development prompted Alaron Trading (Ira Epsteins futures commission merchant) to shift their business away from Man Financial and move it to the clearing services of R.J.O'Brian.

From: "Paul Fry" <Paul.Fry@Cadentfinancial.com>  🖃 View Contact Details  🔋 Add Mobile Alert

To: Jason.Arnold@ranincusa.com, "Kurt Lightcap" <Kurt.Lightcap@Cadentfinancial.com>, "Thomas Konopiots" <Tom.Konopiots@Cadentfinancial.com>, "Ryman Flippen" <Ryman.Flippen@Cadentfinancial.com>, "Stacy Lightcap" <Stacy.Lightcap@Cadentfinancial.com>, "Wilson Gambrel" <Wilson.Gambrel@Cadentfinancial.com>, "Linas A. Jucas" <Linas.Jucas@Cadentfinancial.com>, Todd.Backes@ranincusa.com, oscarfutures@yahoo.com, ranorder_help@ranincusa.com

**Please facilitate our Comex Gold, Silver and Copper Futures and Options placed via Ranorder to go to Oscar Carboni's execution group beginning Tuesday Morning 10/25/05.**

*Thanks,*
*Paul Fry*
*Senior Vice President, Risk Management*
*Cadent Financial Services LLC.*
*Phone    312-384-1117*

14

6.    Cadent financial being satisfied with my service began to execute all of their New York business through my company Corn Trading Inc. This was to include the huge Nymex Energies complex account as well as the New York Board of Trade Softs Commodities complex. Below are a few lines of Instant Messages showing a viable relationship exists.

*cmbunch2000 (12/2/2005 9:59:17 AM): we aren't paying 1.5 as far as i know*
*Oscar Carboni (12/2/2005 9:59:37 AM): yes thats wgat hits on my run each day*
*cmbunch2000 (12/2/2005 9:59:38 AM): we can talk about that oscar-you're doing an excellent job*
*Oscar Carboni (12/2/2005 9:59:43 AM): ty*
*Oscar Carboni (12/2/2005 10:00:01 AM): I have to pay my floor traders to execute so my end is not all that much*
*Oscar Carboni (12/2/2005 10:00:16 AM): Can we put this conversation to bed today?*
*Oscar Carboni (12/2/2005 10:00:35 AM): I would appreciate it as it is only the 2nd of the month*

*Oscar Carboni (11/23/2005 9:54:44 AM): do u still wish for me to place the nybot and nymex business?*
*cmbunch2000 (11/23/2005 10:16:24 AM): yes-absolutely if you can-i've just been too busy to get you volume*
*Oscar Carboni (11/23/2005 10:17:36 AM): i really cant without knowing the volume. It also needs to be relatively accurate volume so I dont make false statements*
*cmbunch2000 (11/23/2005 10:20:21 AM): i know*
*cmbunch2000 (11/23/2005 11:31:53 AM): csce 238 tickets tickets last month, 13400 contract*
*cmbunch2000 (11/23/2005 11:32:01 AM): 1300 not 13400*
*cmbunch2000 (11/23/2005 11:32:13 AM): nyce 88 tickets 200 rt's*
*cmbunch2000 (11/23/2005 11:32:37 AM): nymex 1702 tickets 16000 contracts*
*cmbunch2000 (11/23/2005 11:32:45 AM): there you go*
*cmbunch2000 (11/23/2005 11:32:59 AM): these will*

7.    I had enjoyed the same relationship with Bill Peters Group out of Chicago as well as other clients during 2005 who began routing their Comex order flow to my trading desk stationed in the Comex/Nymex pits.

8.    As time passed during 2005, the Linn Group was so satisfied with my personal service that they wrote Ira Epstein, Principal of Independent Brokerage Firm Ira Epstein and Co., and referred my commodity services. The corresponding email is referenced below.

Yahoo! Mail - oscarfutures@yahoo.com                    http://us.f546.mail.yahoo.com/ym/ShowLetter?box=Sent&MsgId=76...

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Sun, 30 Jan 2005 18:14:48 -0800 (PST) |
| **From:** | "Oscar Carboni" <oscarfutures@yahoo.com> |
| **Subject:** | A note from Oscar |
| **To:** | "gordy linn" <gdl@linngroup.com> |

Dear Gordy,

I just wanted to express my gratitude for offering your floor business to me.  You will not be disappointed.  I will give commentary in a professional manner.  I would like to do a practice run tomorrow morning if thats ok with you. If all goes well I will begin commentary Monday afternoon, Tuesday morning at the latest. If this is not in accordance with your plans please let me know.

Also, are you interested in doing the clearing for a non-clearing FCM?  Please let me know your thoughts on this subject.

You wanted a little blurb about my past history...A little about myself...

*I have been a technical/fundamental analyst of the futures markets since 1983.*
*I studied under John Murphy (founder of Murphy-Morris). He was my professor at the New york Institute of Finance.*
*I have been a commodities broker trading for myself as well as executing customer orders since 1987.*
*I am a member of COMEX as well as a member of the Russel Indexes on the NYBOT exchange.*
*I have owned and operated an introducing brokerage firm , Futures Analysts & Traders, inc since 1994.*
*I have no regulatory problems with the NFA nor have I ever even had as much as a warning in my 23 year career.*
*I am an accomplished trader of many, many futures/commodities markets for my own account.*
*I also have acted in the capacity of CTA with a winning real-time track record.*
*I have customers all over the world and I am an accomplished world traveler. I get along quite well with European and Middle Eastern & Asian customers. (if you ever are in need of a liaison)*

... I can't really think of anything else that might be pertinent to this business venture.  If you need any other information please do not hesitate to call.

FLOOR 1-212-590-1557
CELL   1-917-804-0969
EVES   1-718-667-1120

Wishing you all the best,

Oscar  Carboni


Do you Yahoo!?
Yahoo! Mail - now with 250MB free storage. Learn more.

15



Supporting Documentation listed as

Emails -2

-----Original Message-----
**From:** Barry Isaacson [mailto:bisaacson@alaron.com]
**Sent:** Tuesday, December 13, 2005 10:36 AM
**To:** ira@iepstein.com
**Cc:** ChuckB@iepstein.com; oscarfutures@yahoo.com; Gary Weber; Lenny Sowa;
Bob Lake
**Subject:** FW: RJO O'Brien

-----Original Message-----
**From:** Ira Epstein [mailto:ira@iepstein.com]
**Sent:** Tuesday, December 13, 2005 9:10 AM
**To:** Barry Isaacson
**Subject:** RE: RJO O'Brien

If something does go wrong, I understand it will be between IEC and Oscar.
Barring that, what else do you see that I am missing.

Through an introduction from me, Gordy Linn has been using Oscar for a very long
time. He likes the personal service Oscar brings. The metal fund business I am
developing will require at times hands on fills for some of their larger orders. Oscar
should fit the bill.

Ira,

Yesterday in the Silver futures RJO is so buried with paper they forgot.
that's right forgot to execute buying 600 march silver @ 877.00. It cost
them 390,000.00

Please be careful using them for executions as they are way to busy to
handle the paper load and continue to pick up old refco business as of this
writing. I hope we can get our business completed this week and get you
away from that atmosphere

I will contact Bob Lake today. Ill keep you informed.

2

Oscar Carboni

President C.O.M. Trading Inc.


**From:** Barry Isaacson [mailto:bisaacson@alaron.com]
**Sent:** Tuesday, December 13, 2005 8:57 AM
**To:** Ira Epstein
**Cc:** Bob Lake; ChuckB@iepstein.com; Scott Slutsky; Gary Weber; Jason Carver
**Subject:** RE: RJO O'Brien

    -----Original Message-----
    **From:** Barry Isaacson
    **Sent:** Wednesday, December 07, 2005 3:59 PM
    **To:** 'Ira Epstein'
    **Cc:** 'Bob Lake'
    **Subject:** RE: RJO O'Brien

        -----Original Message-----
        **From:** Ira Epstein [mailto:ira@iepstein.com]
        **Sent:** Wednesday, December 07, 2005 2:53 PM
        **To:** Barry Isaacson
        **Subject:** FW: RJO O'Brien

        **From:** Oscar Carboni [mailto:oscarfutures@yahoo.com]
        **Sent:** Wednesday, December 07, 2005 2:32 PM
        **To:** Ira Epstein
        **Subject:** RE: RJO O'Brien

To: "'Oscar Carboni'" <oscarfutures@yahoo.com>
CC: "'Bob Lake'" <blake@rjobrien.com>
Subject: RE: FW: RJO O'Brien
Date: Thu. 8 Dec 2005 11:12:48 -0600

[illegible] at this point, I would like to know.

**From:** Oscar Carboni [mailto:oscarfutures@yahoo.com]
**Sent:** Thursday, December 08, 2005 10:40 AM
**To:** Ira Epstein
**Subject:** Re: FW: RJO O'Brien

*Ira,*

*My DR (disaster relief) protocol is about the same as RJO. I've checked this out with RJO already. I have an additional printer terminal sitting here with nothing to do but wait for a disaster. What ever line goes down can immediately be rerouted to the spare terminal. This is something that Robert @ tops can do in literally seconds. Second line of defense is to have the orders called into the individual booth(s) if a total tops failure occured. This parallels the same protocol as RJO follows.*

*This is merely the political wall I've been telling you about. I was astounded at the harshness of Barry"s first reply to you. This is not the proper way to service a large customer like Ira Epstein & co.*

*From what I've been told earlier today RJO will do what ever you ask. Maybe 1 cool down day is in order. We can pick this up again tomorrow morning if that is acceptable to you.*

*Your friend.*

*Oscar Carboni*
*President C.O.M.Trading Inc*

***Ira Epstein <ira@iepstein.com>*** wrote:
[illegible]

**From:** Bob Lake [mailto:blake@rjobrien.com]
**Sent:** Wednesday, December 07, 2005 4:06 PM
**To:** Barry Isaacson; Ira Epstein
**Subject:** RE: RJO O'Brien

[illegible]

Ira,

Do you know which steps need to be taken to satisfy Barry's request to go through proper channels? I believe the ball is in your court at present. I have all the necessary equipment to accommodate your Comex business already in place if we choose Tops. I have not heard of a tops order charge in the past but maybe Bob Lake from RJOBrien knows something we are unaware of. Bob Lake called me today to say this would be very easily done with Barry's approval. I'm looking forward to a very prosperous relationship with your firm.

Please convey your thoughts on this matter.

All the best,

Oscar Carboni

President C.O.M.Trading inc

**Ira Epstein <ira@iepstein.com> wrote:**

**From:** Barry Isaacson
[mailto:bisaacson@alaron.com]
**Sent:** Wednesday, December 07, 2005 10:29 AM
**To:** Ira Epstein
**Cc:** Gary Weber; John Hackner; Dan Lazarus
**Subject:** RJO O'Brien

4

Ira

Just because in your mind I get nothing done around here, doesn't give you the right to contact our representative at RJO and request for your orders to be routed to a specific broker. Just as you would not want your clients contacting your vendors I can not have our clients or brokers contacting our vendors directly. If there is a request that you are interested in pursuing I would appreciate it if you would either contact Gary or our IB services to see if it can be accommodated.

I do need for you to go through the proper channels as we are ultimately responsible for how and where are orders are routed.

Thank you for your cooperation on these types of issues.

Barry

**Yahoo! Personals**
Single? There's someone we'd like you to meet.
Lots of someones, actually.

Yahoo! Shopping
Find Great Deals on Gifts at

**Exhibit G
to Ware Affidavit**

*Jan. 16, 2008 NFA Service Letter*



**NFA**    N A T I O N A L   F U T U R E S   A S S O C I A T I O N

January 16, 2008

Ms. Mary E. Siemens
RJ O'Brien Associates LLC
222 S. Riverside Plaza
Suite 900
Chicago, Illinois 60606

Re:    <u>07-ARB-175</u> – <u>Carboni v. RJ O'Brien Associates LLC, et al.</u>

Dear Ms. Siemens:

    National Futures Association ("NFA") has received the enclosed Arbitration Claim, which names you as a Respondent, along with RJ O'Brien Associates LLC, Robert M. Lake, Colleen M. Knupp and Gerald F. Corcoran. NFA records indicate that Helen McCarthy, Karen Northup, John W. O'Brien and RJO Holdings Corp. are not current NFA Members or Associate Members, and were not Members or Associate Members during the time of the dispute. Under Section 2 of NFA Member Arbitration rules, NFA only has jurisdiction over NFA Members and Associate Members. Therefore, NFA has rejected McCarthy, Northup, O'Brien and RJO Holdings Corp. as Respondents in this matter. I have outlined other important information about this case below.

**Attorney's Fees**

    The Claimant has made a request for attorney's fees but has not provided a contractual or statutory basis for the request. Until he provides such a basis, NFA will not honor the request. See Section 12 of the Member Arbitration Rules

**Representation**

    A party has the right to be represented in the arbitration process by an attorney-at-law licensed to practice law in the highest court of any state, by a family member or other person who is representing the party without compensation and who does not have an interest in the outcome of the dispute, or by an officer, partner or employee of the party.  See Section 6 of NFA's Member Arbitration Rules.  Some states (e.g., California) also restrict who may represent a party in an arbitration proceeding.  Therefore, if you decide to be represented in this proceeding, it is your responsibility to make sure that your representative meets NFA and any relevant state requirements.

**The Answer**

    NFA arbitration provides an efficient and inexpensive forum for resolving futures related disputes.  I have enclosed a copy of NFA's Member Arbitration Rules, which govern this proceeding.

    Since you are an NFA Associate Member, NFA considers the arbitration of this matter mandatory under Section 2(a) of the Rules.  Therefore, under Section 5(e) of the Rules,



-2-

Ms. Mary Siemens                                                    January 16, 2008

you must send an Answer and the $675 service fee to NFA by **March 3, 2008**.  You should include the following information in the Answer:

1.    Your choice of two (2) metropolitan areas for the arbitration hearing. NFA will only consider your site preferences if they are indicated in a timely-filed pleading. If you agree to extend any pleading due date, and you would like NFA to consider your site preferences, you must still provide them to NFA by **March 3, 2008**.

2.    The names of your witnesses, their addresses and current business affiliations.

3.    A numbered list of all documents that you intend to use to support the Answer.  Please include copies of any of these documents that are in your possession.

4.    A signed attestation that states: "I certify that to the best of my knowledge, information and belief, formed after a reasonable inquiry, the statements set forth in this pleading are true and correct."

Please do not omit this information as it is critical to the arbitration process.

You should send the Answer, the $675 service fee, and five (5) copies to me at NFA, 300 S. Riverside Plaza, Suite 1800, Chicago, IL 60606.  You should also send a copy of the Answer to the Claimant's representative at the address provided on the Claim form.  NFA suggests that the Answer be sent "Return Receipt Requested" for purposes of your records.

**NFA's Discovery Timetable**

Automatic Exchange of Documents and Information

Under NFA's discovery rules, the parties have the obligation to provide and the right to request documents and information that relate to the case.  Section 7(a) requires the parties to automatically exchange certain documents early in the discovery process.

Under this rule, NFA has identified the standard documents that are relevant in this case.  A list of relevant documents is attached.

The parties must exchange these documents with each other by **March 18, 2008**.  The parties are not, however, required to produce or exchange any documents or information that are not in their possession or control, or to provide NFA with copies of the documents they exchange.



<div style="text-align:center">-3-</div>

Ms. Mary Siemens                                                    January 16, 2008

Requests for Other Documents and Information

You may ask for other documents and information that relate to the case. Under Section 7(a), you must make your requests and provide the information on or before the following dates.

1.   The due date for requesting other documents and written information is **April 2, 2008**.

2.   The due date for providing the requested documents and written information (or for submitting a written objection to a request) is **May 2, 2008**.

All requests and responses should be in writing and sent directly to the party involved, with copies to all other parties. Furthermore, there is no need to file your discovery requests with NFA or to provide NFA with copies of material obtained or provided during discovery.

Requests for Other Documents and Information from non-parties

Under Section 9(d) of NFA's Rules, the parties must submit all subpoena requests to the Panel and serve those requests in accordance with Section 15(b) of the Rules. Subpoenas issued by the Panel may be enforced in a court of competent jurisdiction.

Requests to Compel Production of Documents and Information

If the deadline for providing the documents and information passes and you do not receive a response, or you believe the response is incomplete, or if the response was an objection, you can file a written request with NFA asking the arbitrator to compel the other party to provide you with the documents and information.

1.   The due date for filing a request to compel production of the documents and information is **May 12, 2008**.

2.   A written response to the request to compel production is due ten days after the request to compel is mailed or personally delivered to you.

If you are going to file a request to compel, you must file it by the deadline or you may be waiving your right to do so. NFA will not accept a late request unless you explain in writing why it was late.



-4-

Ms. Mary Siemens                                                    January 16, 2008

Your written request should identify the documents and information you requested and clearly state why you consider them relevant and necessary. If the other party has objected to your request, you should include a copy of the objection and explain why you feel the objection is not valid.

You must also include a written certification with any request to compel. The certification must state that you made a good faith effort to resolve the discovery dispute through either a telephone conference or an in-person meeting with the other party or its representative. You should send a copy of the request to compel and the certification to the other party at the same time you send them to NFA.

NFA will send the request to compel, the certification, and any response to the request to the arbitrator for consideration. However, NFA will return any request to compel, certification, or response that is incomplete. Therefore, it is in your best interest to file a complete submission.

Pre-Hearing Motion Fee

Under Section 7(f) of NFA's Rules, any party filing a Motion after **June 9, 2008** must include the following fee with that Motion.

1.    In cases involving three arbitrators, any party filing a motion shall include a $425 motion fee with each motion filed.

These motion fees are separate from any fees required for a postponement request or a request for a preliminary hearing.

Other Discovery Information

If a counterclaim, cross-claim or third-party claim is filed, NFA will extend the discovery deadlines. We will notify you of the new deadlines.

**Service of Process**

NFA's arbitration rules require that when you serve pleadings, documents and correspondence on NFA, you are to simultaneously serve those documents on every other party. You should also indicate on the document that you served every other party.



-5-

Ms. Mary Siemens                                                    January 16, 2008

After the initial pleadings are filed in a case, NFA will accept and serve filings (e.g., letters and motions) in the arbitration process by mail, electronic mail or facsimile. Serving documents by e-mail or fax is optional in case a party does not have the ability to use these systems.  Furthermore, a party may simultaneously use different service methods (e.g., e-mail to NFA and fax to the other party).  However, the filing party must ensure that the method used means everyone will receive the document on the same day.  For example, if you are going to send a letter by e-mail but the other party does not have e-mail capabilities, then you may e-mail the letter to NFA and fax it to the other party so that the other party receives the letter on the same day as NFA.

**Mediation**

In June 1991, NFA enhanced its successful arbitration program by incorporating mediation into the early stages of the arbitration process.  You will be contacted about mediation shortly after the deadline for filing the last pleading (i.e., Answer, Reply).

**Educational Materials**

NFA has published a handbook that contains useful and practical information about its arbitration procedures.  You can download NFA Arbitration:  Procedural Guide for Member Disputes from NFA's web site at www.nfa.futures.org or call NFA at 800-621-3570 to obtain a copy.

If you have any questions in the meantime, please contact me at (312) 781-1484.

Very truly yours,

Megan Pluskis
Case Administrator

Enclosures

# NFA

## LIST OF STANDARD DOCUMENTS
## TO BE PRODUCED BY THE PARTIES

1. To be produced by Michael J. Carboni, RJ O'Brien Associates LLC ("RJO"), Gerald F. Corcoran, Colleen M. Knupp, Robert M. Lake and Mary E. Siemens:

a) Records, tapes, notes and transcripts of tapes of telephone or in-person conversations between Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and any personnel of RJO regarding establishing the business relationship, any terms of the business relationship, or dissolving the business relationship.

b) Memoranda, notes and correspondence between Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and any personnel of RJO regarding establishing the business relationship, any terms of the business relationship, or dissolving the business relationship.

c) All contracts and written agreements between Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and RJO, including partnership and joint venture agreements.

d) If the dissolving business, any general partner, 10% or greater shareholder, joint venturer, or trustee, or any surviving entity is a corporation, the articles of incorporation and bylaws of the corporation and any board resolutions and minutes of the board meetings that relate in any way to the business relationship between Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and RJO.

e) Annual reports and financial statements for the dissolving business, any general partner, 10% or greater shareholder, joint venturer, or trustee, or any surviving entity, immediately preceding the date Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and RJO started discussing establishing the relationship through the present.

f) Disclosure documents for the dissolving business, any general partner, 10% or greater shareholder, joint venturer, or trustee, or any surviving entity that is a CPO or CTA, in effect from the date Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens and RJO started discussing establishing the relationship through the present.

g) Records of security or guarantee deposits made by Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens or RJO with or for the benefit of Mr. Carboni, Mr. Corcoran, Ms. Knupp, Mr. Lake, Ms. Siemens or RJO.