UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MICHAEL CARBONI, :
:
               Plaintiff, :   06 Civ. 15488 (RJH)
:
:   **MEMORANDUM OPINION**
     -against- :   **AND ORDER**
:
ROBERT LAKE and R.J. O'BRIEN & :
ASSOCIATES, INC., :
:
              Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## BACKGROUND

In this action, plaintiff Michael Carboni ("Plaintiff") has asserted causes of action including defamation and tortious interference with business relations arising out of an email allegedly composed and circulated by defendants Robert Lake and R.J. O'Brien & Associates, Inc. ("RJO") (collectively, "Defendants") that resulted in the "blacklisting" of Plaintiff and his company from doing business on the Commodities Futures Exchange. In December 2006, Defendants removed the action from the Supreme Court of the State of New York to this Court, which held in October 2007 that the dispute was subject to mandatory arbitration under the rules of the New York Mercantile Exchange ("NYMEX") and, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, "stay[ed] all proceedings pending completion of arbitration under the Rules of NYMEX." (Oct. 5, 2007 Tr. 8–13.)

In December 2007, Plaintiff filed an arbitration claim based on these same facts with the National Futures Association ("NFA") arbitration board.  (*See* Ware Aff. Ex. F, Feb. 7, 2008.)  Defendants then filed the instant motion, by order to show cause, requesting that the Court "stay the NFA arbitration and reassert its conclusion that [Plaintiff's] remedy, if he has one, will come only from arbitration at NYMEX."  (Defs.' Br. 4.)

## ANALYSIS

This Court has already held that the instant dispute is subject to NYMEX Rule 5.04(A),[1] which provides that certain claims between NYMEX members will be arbitrated "under [NYMEX] Rules," and has stayed the action "pending completion of arbitration under the Rules of NYMEX."  (Oct. 5, 2007 Tr. 13.)  Rule 5.18(A)(1)(a) of the NYMEX Rules provides procedures for submitting arbitration claims "under [NYMEX] Rules" and Rule 5.06 provides that the Chairman of the Arbitration Committee shall appoint the arbitration panel in proceedings submitted "under [NYMEX] Rules."  Therefore, the NYMEX Rules make clear that arbitration under NYMEX Rules must proceed before an arbitration panel appointed by NYMEX.

Plaintiff concedes that the NYMEX Rules apply to this dispute[2] but nevertheless contends that that his arbitration claim should be permitted to proceed before the NFA,

---

[1] The NYMEX Arbitration rules are available at www.nymex.com/rule_main.aspx.

[2] Plaintiff furthermore concedes that the NFA Member Arbitration Rules do *not* require arbitration of this dispute.  Section 2(a) of the NFA Member Arbitration Rules, available at http://www.nfa.futures.org/nfaManual/manualMemberArb.asp#S2marba, states that "[D]isputes between and among Members shall be arbitrated under these Rules unless: . . . the parties, by valid and binding agreement, have committed themselves to the resolution of such dispute in a forum other than NFA."  Though both Plaintiff and Mr. Lake are alleged to be members of the NFA (Pl.'s Opp'n 8), they have a valid and binding agreement to resolve this dispute in the NYMEX arbitration proceedings.

alleging that the NYMEX arbitration proceedings cannot be impartial due to Defendants' "considerable power and influence" within NYMEX. (Pl.'s Opp'n 3–7.) Plaintiff asserts that RJO is one of the "largest and most influential clearing firm[s] on the NYMEX and is responsible for executing a significant percentage of all orders placed on the trading floor." (*Id.* at 2.) Similarly, Mr. Lake, as the RJO floor manager in the COMEX division of NYMEX, "controls a significant amount of business directed to trading floor brokers" and "asserts great power and influence over commodities trading personnel." (*Id.*) Because under NYMEX Rule 5.07, the arbitration panel will be composed of NYMEX members or NYMEX members' employees, Plaintiff believes the "evident partiality of the arbitrations can reasonably be inferred." (*Id.* at 7.)

As Plaintiff acknowledges, "[t]he FAA establishes a national policy favoring arbitration requiring courts to rigorously enforce agreements to arbitrate." (*Id.* at 3–4 (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).) Contrary to Plaintiff's contention that "nothing in the terms of the FAA requires a litigant to submit to an arbitration board he reasonably believes to be unfair or biased" (*Id.* at 4), the FAA *does* "require[] courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Furthermore, "an [arbitration] award will *not* be enforced if the arbitrator is not chosen in accordance with the method agreed to by the parties." *Avis Rent A Car Sys., Inc. v. Garage Employees Union, Local 272*, 791 F.2d 22, 25 (2d Cir. 1986) (emphasis added).

Under the FAA, "arbitration agreements are enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (quoting 9 U.S.C. § 2). Plaintiff's unsupported allegations regarding Defendants' influential status within NYMEX fall far short of a showing of fraud, duress, or unconscionability—the circumstances courts have identified as sufficient to warrant disregarding an arbitration agreement to which the parties have agreed. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."); *Gilmer*, 500 U.S. at 33 (suggesting that arbitration agreement might be unenforceable if it resulted from fraud or "overwhelming economic power"); *see also Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996) ("An unconscionable bargain is one in which 'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'" (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889))).

      The United States Supreme Court rejected arguments similar to Plaintiff's in *Gilmer v. Interstate/Johnson Lane Corp*. In *Gilmer*, the Court held that claims brought under the ADEA could be subject to compulsory arbitration pursuant to an arbitration agreement. 500 U.S. at 23. The plaintiff in *Gilmer* had argued, *inter alia*, that arbitration of his claim was inconsistent with purposes of the ADEA, because arbitration panels appointed under the rules of the New York Stock Exchange ("NYSE") would be biased. *Id.* at 30. The Court "decline[d] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators," noting that the NYSE arbitration rules included "protections against biased panels." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler*

4

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)).  Similarly, in the instant case, NYMEX Rule 5.14 requires arbitrators to disclose "any . . . financial or personal interest in the outcome of the arbitration and any . . . professional, family or social relationships with any party . . . or any . . . witness, which are likely to affect such arbitrator's impartiality or might reasonably create an appearance of partiality or bias," and that any party may seek disqualification of an arbitrator based on these disclosures.  Also, under NYMEX Rule 5.16, a party may submit objections to any arbitrator appointed by the Chairman.  In ruling on requests to disqualify and objections, the Chairman is required to follow the American Arbitration Association's Code of Ethics for Arbitrators in Commercial Disputes.  The Court in *Gilmer* also noted that Section 10 of the FAA, which permits courts to overturn arbitration decisions if "the award was procured by corruption, fraud, or undue means" or "where there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a), provides further protection against bias,[3] *Gilmer*, 500 U.S. at 30.  The instant Plaintiff, like the plaintiff in *Gilmer*, has made "no showing . . . that [the NYMEX Rules and Section 10 of the FAA] are inadequate to guard against potential bias."  *Id.* at 31.[4]

---

[3]  Section 10(a) of the FAA states:
  (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
    (1) where the award was procured by corruption, fraud, or undue means;
    (2) where there was evident partiality or corruption in the arbitrators, or either of them;
    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

[4]  Plaintiff's reliance on Section 10 of the FAA, 9 U.S.C. § 10, and *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), is misplaced.  As noted, Section 10 permits an arbitration award to be vacated under certain conditions.  In *Commonwealth Coatings*, the Supreme Court held that under Section 10, vacatur of an arbitration award was required when one of the arbitrators failed to disclose

The Second Circuit's decision in *In re Arbitration between Garfield & Co. and Wiest*, 432 F.2d 849 (2d Cir. 1970), is also instructive. In that case, the court affirmed the rejection of a plaintiff's petition to vacate an arbitration award pursuant to Section 10 of the FAA. *In re Arbitration between Garfield & Co. and Wiest*, 432 F.2d at 850–54. The plaintiff, a small member firm of the NYSE, filed an arbitration claim against a large specialist firm and the former Chairman of the Board of Governors for the NYSE. *Id.* at 850–51. Under the Rules of the NYSE, the arbitration panel was selected from exchange members. *Id.* at 851. The plaintiff sought vacatur of the award because the arbitrators "did not reveal the exact extent of their dealings" with the defendants. *Id.* at 852–53. The Second Circuit held that disclosure was not required because the parties had waived their objections to such dealings, explaining "[t]he selection of the arbitration panels was known to [the plaintiff], and it most certainly knew that any arbitrators, by their very connection with the Exchange, would, in the ordinary course of business, have dealings with specialists, [] that Exchange arbitrators would usually have more substantial contacts with large member firms than with small member firms, . . . [and] that if it should ever become involved in a dispute that concerned a former Chairman . . . it would be probable that the arbitrators might have had some dealings with the former chairman." *Id.* at 853–54. Therefore, "it would appear that any objections to arbitrators based upon their dealings . . . are waived by member firms when they agree to Exchange arbitration [since] such dealings are contemplated by the parties when they join the exchange." *Id.* at 854.

Plaintiff also contends that he should be permitted to pursue his claim before the NFA because of the inconvenience and cost of arbitration in New York under the

---

that he had business dealings with one of the parties to the arbitration. 393 U.S. at 146–50. Neither Section 10 of the FAA nor *Commonwealth Coatings* provides authority for a court to refuse to enforce an arbitration agreement based on one party's perception that the proceedings will favor his opponent.

6

NYMEX Rules. (Pl.'s Opp'n 10.) As an initial matter, NYMEX Rules do not designate New York as the location for arbitration proceedings, but state that the time and place of hearings shall be determined by the Exchange. *See* NYMEX Rule 5.17. Plaintiff does not dispute that he had notice of this provision. The Court may not decline to enforce an arbitration agreement based on the potential inconvenience to one party. *See, e.g., Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998) (rejecting claim that arbitration clause was unconscionable due to costs and inconvenience of forum where arbitration clause disclosed costs and location and plaintiff did not contest receiving notice of this clause); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir. 1990) ("When Congress enacted the [FAA] making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs." (quoting *Roney & Co. v. Goren*, 875 F.2d 1218, 1223 (6th Cir. 1989))).[5]

---

[5] Plaintiff asserts that the alleged inconvenience and cost of NYMEX arbitration permits this Court to "transfer" his arbitration claim to the NFA based on the doctrine of *forum non conveniens*. (Pl.'s Opp'n 9–11.) A court has "discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S.Ct. 1184, 1190 (2007). *Forum non conveniens* does not apply here, where the "forum" at issue is not a judicial forum chosen by the plaintiff, but rather a situs for arbitration specified in arbitration rules to which both parties have agreed.

## CONCLUSION

Defendants have provided no legal authority, and the Court is aware of none, that would permit this Court to "stay" the arbitration proceedings filed before the NFA, which is not a party to this action or to the NYMEX arbitration agreement. The Court will therefore interpret Defendants' motion as requesting an order pursuant to Section 4 of the FAA, 9 U.S.C. § 4, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [this Court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

Accordingly, Defendants' motion **[20]** is granted. Plaintiff is ordered to withdraw his NFA arbitration claim. If Plaintiff chooses to exercise his right to submit his dispute to arbitration, he must do so in accordance with the NYMEX Rules.

SO ORDERED.

Dated: New York, New York
       June 20, 2008

Richard J. Holwell
United States District Judge